JOHNSON, APPELLEE, *v.* INDUSTRIAL COMMISSION OF OHIO, APPELLANT.

(Decided April 3, 1939.)

Messrs. *Cowan, Adams & Adams,* for appellee.
Mr. *P. R. Taylor,* for appellant.

LLOYD, J.  This is an appeal by the Industrial Commission on questions of law from a judgment of the Court of Common Pleas in favor of Jennie Johnson, appellee.

Appellee, in behalf of herself, as the widow, and in behalf of the minor children of Peter Johnson, applied to the commission for compensation for his death resulting, as she claims, from physical injuries received by him while and when engaged in the performance of his duties as assistant foreman of construction by The Stacey Brothers Gas Construction Company of Cincinnati.

At the time of his alleged injury, May 9, 1936, he was engaged with other employees in straightening "buckles" caused by a windstorm in some of the plates of a steel gas and oil storage tank being erected by his employer for The Pure Oil Company of Toledo.

The tank was between 30 and 35 feet in height and approximately 100 feet in diameter. The top or roof was dome-shaped, its center being about six feet higher than the center edge of the tank. At the bottom of the tank was a man-hole about 20 inches in diameter, which was the only aperture through which workmen could enter and leave the tank. In the tank, also, were two 10-inch holes. These three holes were the only openings in the tank through which air from the outside could pass. On May 9, 1936, the date of the alleged injury to Johnson, the sun was shining 97 per cent of the time, the velocity of the wind being from 6 to 14 miles an hour and the temperature outside of the tank varying from 69 to 88 degrees. Inside the tank the temperature ranged from 110 to 120 degrees. Johnson, going from the inside to the outside of the tank in the course of his employment, was subjected to the change in temperature, and the evidence is, that when he came from within the tank to the outside thereof and climbed upon the outside scaffold, 25 feet in height, to perform the work he was engaged to do, his clothes were wet with perspiration and as a result of the effect of the sudden change of temperature, later in the day he began feeling some pain or constriction in his chest and the following day was so ill that he remained at home in bed.

The next day he was taken to Flower Hospital in Toledo, where it was found that he was suffering from "an early pneumonitis of both lungs which developed into pneumonia of both the right and left lung," of which he died on May 17, 1936.

The only error of moment alleged by the commission is that the trial court should have directed a verdict in its behalf and this claim of error presents the sole question of whether Johnson suffered "physical or traumatic injuries accidental in their origin and cause; the result of a sudden happening at a particular time." *Goodman* v. *Industrial Commission,* 135 Ohio St., 81, 19 N. E. (2d), 508.

The evidence as to the cause of the pneumonia is entirely medical and those testifying on behalf of appellee stated that the change in temperature caused a thermal injury to the lung tissue and that the pneumonia resulted from the effect of the changes in temperature occasioned by Johnson getting in and out of the tank. One of them said:

"In this instance, I think, that it was the repeated exposures to the marked differences in temperature that served as the pre-disposing factor" in the development of the pneumonia.

"The direct effect of abnormal changes upon the tissues of the lungs—particularly the delicate tissues of the alveoli—has a damaging effect, if the changes are in the extreme. The direct damage to these lining membranes allows infection to pass the normal barrier that the lining presents and this allows such infecting organisms to become active, producing inflammation. I would call it a thermal damage or a thermal injury to the lung."

Another witness testified as follows:

"Q. How would you classify, Doctor, the sudden changes in temperature to which this man was subjected, as stated in the hypothetical question? A. I would classify that under the head of injuries because

of the change in temperatures so rapid and so extreme, I would think that the lung itself and the general makeup of the individual was injured at the time due to sudden changes of temperature. * * * In this way: a lung may be injured by a blow, giving it a hyperemia —by that I mean an increase of the blood supply—and the lung may be subject to temperature which will likewise give it a hyperemia and an ischemia, which is the opposite, a depletion of the blood supply—from the two temperatures that the man was exposed to, thus injuring the cells and lowering their vitality, so whether there was a blow or temperature change, the bacteria present have a chance to work. In other words, both tissues have been devitalized, one by a blow and the other by temperature variations. * * * I think that the lungs, the definite injury to the lungs by changes of temperature is just as much trauma as to take the lung and hit it with a hammer or have a blow on the chest.

"Q. Will you define trauma for me, Doctor? A. Trauma to me is an injuring of body cells to such an extent that either bacteria can devour them or that they have died of their own—

"Q. When you examined Mr. Johnson on May 11th, 1936, was there any sign of objective trauma? A. Oh, the cyanosis and labored breathing and pain makes me think that the lungs had been actually injured, even though they have been injured by changes of temperature; I feel that is definite trauma.

"Q. And generally speaking, Doctor, when you speak of trauma you generally look for an external evidence of a contusion, is that correct? A. Yes, you look for it. You don't always find it; it may be an internal injury."

The foregoing outlines the nature of the evidence produced in behalf of appellee as to the cause of the pneumonia which resulted fatally to Johnson. In the view of this court, the evidence adduced by appellee is sufficient under the test announced in the *Goodman*

*case, supra,* to uphold the finding of the jury and the judgment entered thereon. Undoubtedly Johnson was exposed to hazards greater than those to which other persons in the community were exposed and the fact that the sun and the wind contributed to the injury would not exclude his dependents from the benefit of the Workmen's Compensation Law.

The cause of the pneumonia and death was the internal injury resulting from the change of temperature that Johnson was compelled to endure by reason of and incidental to his employment. There is no evidence that ever, before May 9, 1936, had such a situation arisen where he was called upon to work under the circumstances and conditions existing on the day of his injuries. It was an unusual, sudden and unexpected happening, at a particular time, resulting in physical injuries accidental in origin and cause, as distinguished from mere "medical trauma."

This court concludes that the judgment of the Court of Common Pleas should be and accordingly is affirmed.

*Judgment affirmed.*

CARPENTER and OVERMYER, JJ., concur.