115 P.2d 342

**STEVENSON v. LEE MOOR CONTRACT-ING CO. et al.**

No. 4523.

Supreme Court of New Mexico.

July 7, 1941.

George A. Threlkeld, of Roswell, for appellant.

A. K. Montgomery, of Santa Fe, and Jones, Hardie, Grambling & Howell and Lytton R. Taylor, all of El Paso, Tex., for appellees.

PER CURIAM.

Upon consideration of appellant's motion for rehearing the original opinion is withdrawn and the following substituted:

BRICE, Chief Justice.

Appellant Stevenson, a truck driver employed by appellee company, a road building

contractor, became ill after driving and operating for one day one of the heavy trucks of the company, claiming that he inhaled excessive dust from the road work and fumes and gases from the motor exhaust, and that he quickly developed pneumonia by which he was incapacitated for some three months, and from which he would probably continue to be unable to work for some time in the future. He asks for workmen's compensation, as provided by the Workmen's Compensation Act, Chapter 156, N.M.S.A., 1929, and amendments.

Compensation was refused upon the ground that no accident was suffered by appellant which would, under the act, be compensable. The lower court found for appellees, the companies (the contractor and his surety), and appellant appeals.

The following are the findings and conclusions of the trial court having reference to the injury and the circumstances leading thereto:

"That on March 19, 1938, Lee Moor Contracting Company as employer of C. R. Stevenson, furnished to be driven by said C. R. Stevenson a large heavy duty International Truck of ten ton or more capacity for hauling excavated matter, * * *.

"That said truck was an old truck and so worn from long usage that about four and one-half gallons of oil were used in it in seven hours of running on said day, said amount of oil, on account of the worn condition of the motor of said truck, being necessary for the operation of the said truck.

"That the exhaust pipe discharged gases, fumes and smoke from the motor at a point under the truck about even with the seat-back of the driver's seat, and from the exhaust manifold where a gasket should have retained the exhaust fumes but there being no exhaust gasket the fumes escaped into the air on the right side of the motor. Smoke and fumes also escaped from the breather wherein oil is poured into the motor and from the coupling connecting the exhaust manifold and the exhaust pipe on the right side of the motor.

"That the said motor created and discharged an excessive amount of smoke and gases as compared with the other trucks on the job. That the fumes and gases thrown off by the said motor were inhaled by the plaintiff.

"That the inhalation of the smoke and gases from the motor irritated the respiratory tract of the plaintiff.

"That the inhalation of the smoke and gases thrown off by the motor reduced the resistance of C. R. Stevenson to such an extent that the pneumo-cocci germs were enabled to multiply and become active in the body of C. R. Stevenson, resulting in pneumonia.

"That the inhalation by C. R. Stevenson of smoke and gases emitted by the truck were an exciting cause of the development of pneumonia which followed.

"That the inhalation by C. R. Stevenson of the smoke and gases emitted by the

truck precipitated the activity of pneumo-cocci germs which resulted in pneumonia.

"On March 19, 1938, plaintiff, C. R. Stevenson, was operating a truck known as Truck No. 54 of the Lee Moor Contracting Company; Truck No. 54 for a period of approximately 30 days prior to this time had been discharging a larger amount of fumes and smoke than other trucks on the same job. All trucks of the character of Truck No. 54 give off fumes and smoke when used in heavy duty. On said date, a large amount of fumes and smoke was given off by said truck, but there was no unusual or excessive amount of fumes and smoke given off by said truck on that date, the amount of fumes and smoke given off by the truck being substantially the same as the amount given off for a period of approximately thirty days. There was no accident and no unusual or unexpected occurrence on that date.

"On or about the 20th day of March, 1938, the plaintiff, C. R. Stevenson suffered an attack of pneumonia which is a disease caused by a specific germ. Any disability suffered by the plaintiff was due to disease and not to an industrial accident."

We reduce these findings, by eliminating repetition and non-essentials, to the following material statements of the facts:

That on March 19, 1938, the employer (appellee Lee Moor Contracting Company, hereinafter called "employer") furnished the employee (appellant) an old heavy-duty truck to be driven in excavation work in the course of his employment, so worn from long usage that it required four and a half gallons of oil for its operation for a day of seven hours.

All trucks of the type of said truck give off some gases and fumes when used in heavy duty; but said truck discharged an *excessive amount of gases compared with other trucks on the job.* The fumes and gases not only escaped through the exhaust pipe, but from the exhaust manifold, because of the lack of a gasket that was required to prevent it; also from the breather, and the coupling connecting the exhaust manifold.

The appellant inhaled gases emitted from the truck which irritated his respiratory tract and reduced his resistance to such an extent that the pneumococci germs present were enabled to multiply and become active, resulting in pneumonia. *"That the inhalation by C. R. Stevenson of the smoke and gases emitted by the truck precipitated the activity of pneumococci germs which resulted in pneumonia."* (Emphasis ours.)

The findings of the court, when reduced to the smallest compass, are that the appellant was furnished by his employer with an old, defective truck that emitted *excessive* gases and fumes *(more than any other on the job),* which he breathed while operating the truck, the effect of which was to precipitate "the activity of pneumococci, which resulted in pneumonia."

The trial court made no separate conclusions of law. In two findings requested by appellee it is stated "There was no * * * accident on that date," and

"any disability suffered by the plaintiff was due to a disease caused by specific germs, not an industrial accident." It is plain that these are conclusions of law deduced from the specific facts theretofore found. While a conclusion that there was no accident under certain findings may be a mixed conclusion of fact and law, in this case it is clearly a conclusion of law and calls for the construction of the meaning of the word "accident" as used in the Workmen's Compensation Act. Birdwell v. Three Forks Portland Cement Co., 98 Mont. 483, 40 P.2d 43.

It was the view of the trial court that, as pneumonia is a disease caused by a "specific germ," under the terms of the Workmen's Compensation Act, an employee is not entitled to compensation, no matter what caused or precipitated the disease. Of course, pneumonia is a germ disease, and any disability plaintiff suffered was due to the disease; but it does not follow, as the trial court concluded, that appellant's injury was not "by accident," if the proximate cause of the disease, and therefore the injury, was an accident.

The appellant's attack of pneumonia was not an occupational disease; that is, one gradually contracted in the ordinary course of employment, and due wholly to causes and conditions that are normal and constantly present and known from experience to be incidental and characteristic of the particular occupation. Cannella v. Gulf Refin. Co. of Louisiana, La.App., 154 So. 406; Associated Indemnity Corp. v. State Industrial Accident Comm., 124 Cal.App. 378, 12 P.2d 1075; Birmingham Elec. Co. v. Meacham, 234 Ala. 506, 175 So. 322; Industrial Comm. of Colorado v. Ule, 97 Colo. 253, 48 P.2d 803. The facts found support the conclusion that it was not an occupational disease.

Our Workmen's Compensation statute was enacted in 1917 and re-enacted with amendments as Ch. 92, L.1937. Our references and citations will be to the latter act. It is provided in Sec. 1 that under conditions described therein the employer will become liable to a workman "injured by accident arising out of and in the course of his employment." This provision was in the original act and retained in the amendment. Sec. 4 of the 1937 act is new, and was copied verbatim from, and is identical with, Sec. 15 of the Workmen's Compensation Act of Colorado, enacted in 1919 (Sec. 294, Ch. 97, Colo. Sts.Ann.1935) and is as follows:

"The right to the compensation provided for in this act, in lieu of any other liability whatsoever, to any and all persons whomsoever, *for any personal injury accidentally sustained* or death resulting therefrom, shall obtain in all cases where the following conditions occur:

"(a) Where, *at the time of the accident,* both employer and employee are subject to the provisions of this act; and where the employer has complied with the provisions thereof regarding insurance.

"(b) Where, *at the time of the accident,* the employee is performing service arising

out of and in the course of his employment.

"(c) Where the injury or death is *proximately caused by accident* arising out of and in the course of his employment, and is not intentionally self-inflicted." (Emphasis ours.)

Sec. 3 refers to claims "for a personal injury sustained by an employee while engaged in the line of his duty"; Sec. 6(*l*) refers to "injuries sustained in extra-hazardous occupations or pursuit" which includes "death resulting from injury, and injuries to workmen, as a result of their employment * * *"; Sec. 7 requires the workman to give written notice "of such accident and of such injury * * *;" Sec. 8 employs the phrase "injury from accident"; Sec. 12 uses the phrase "injured by accident"; Sec. 14 makes it the duty of certain employers of labor to report all compensable "accidental injuries" to the Labor Commissioner.

From the above it will be noticed that "injury by accident," "injury accidentally sustained," "injury proximately caused by accident," "injury sustained * * * while engaged in the line of * * * duty," "injury sustained in extra hazardous occupations," "injury from accident," and "accidental injury" are indiscriminately used to indicate injuries that are compensable. But Sec. 4 of the act, hereinbefore quoted in full, states the specific conditions upon which the workman is entitled to compensation, among which is the condition

that the injury or death must be "proximately caused by accident," etc.

The only question is whether the court erred in holding that under his findings of fact appellant's injury was not "proximately caused by accident," as the phrase is used in Subsec. (c) of Sec. 4 of the 1937 act, supra. The proper construction of the phrase "injury * * * proximately caused by accident" will solve that question.

We are committed to the doctrine that our Workmen's Compensation Act should be construed liberally in favor of claimants. Gonzales v. Chino Copper Co., 29 N.M. 228, 222 P. 903; Baltimore & P. S. B. Co. v. Norton, 284 U.S. 408, 52 S.Ct. 187, 76 L.Ed. 366. In view of the settled policy of this court to so construe the Workmen's Compensation Act, the phrase should be liberally construed in favor of the workman. 71 C.J. Sec. 325, p. 560, and cases cited under note 71.

"Within the general rule that workmen's compensation acts are to be accorded a broad and liberal construction in order to effectuate their evident intent and purpose, where such acts provide compensation only for injury by accident the word 'accident' should be liberally construed; the words 'accidental injury' should likewise be liberally construed." 71 C.J. p. 571. McNeil v. Panhandle Lbr. Co., 34 Idaho 773, 203 P. 1068; Rue v. Eagle, etc., Co., 225 Mo.App. 408, 38 S.W.2d 487.

It has been said regarding the word "accident": "No legal definition has been giv-

en or can be given which is both exact and comprehensive as applied to all circumstances." Peru Plow & Wheel Co. v. Industrial Comm., 311 Ill. 216, 142 N.E. 546, 548; also that the word "accident" is "susceptible of being given such scope that one would hardly venture to define its boundaries"; that it has been discussed and defined more than any word in the English language; Bystrom Bros. v. Jacobson, 162 Wis. 180, 155 N.W. 919, 920, L.R.A.1916D, 966. We call attention to the many definitions of the word "accident" in 1 C.J.S., beginning at p. 426, and in the cumulative supplement to that volume, and cases cited; also see the definitions in Words and Phrases, Perm.Ed., vol. 1, p. 250 et seq.

It is asserted that this phrase, "injury by accident," was correctly construed by the Supreme Court of Arizona in Pierce et al. v. Phelps Dodge Corporation, 42 Ariz. 436, 26 P.2d 1017, 1021, in which it was held that the word "accident" referred to the cause of the injury and not the injury itself. That court said:

"We conclude that on reason, notwithstanding there are many authorities to the contrary, in the phrase 'injured * * * by accident' as found in our Compensation Act, the word 'accident' refers to the cause of the injury and not to the injury itself.

"Following this rule, in order that an employee be entitled to compensation there must be a result, an injury or damage, which is caused by 'an event that takes place without one's foresight or expectation; an undesigned, sudden and unexpected event.'"

We are provided with the following guide to assist us in the construction of such phrases as "injury by accident," as it is used in our Workmen's Compensation Act:

"In the construction of statutes, the following rules shall be observed, unless such construction would be inconsistent with the manifest intent of the legislature or repugnant to the context of the statute:

"First. Words and phrases shall be construed according to the context and the approved usage of the language; but technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in law, shall be construed according to such meaning." Sec. 139-102, N.M.Sts.1929.

Some years before any of the American states had adopted the English Workmen's Compensation Act or its substance, the phrase in question had "acquired a peculiar and appropriate meaning in law" in England. The English act, like that of New Mexico, contained convertible terms, all referring to compensable injuries. The very question raised here was decided in Fenton v. Thorley, [1903] A.C. 443, by the House of Lords, fourteen years before the enactment of New Mexico's workmen's compensation statutes. We quote from Lord Macnaghten's opinion, as follows: "The 1st section of the Act, sub-s. 1, declares that 'if in any employment to which this Act applies personal injury by accident arising out of and in the course of the employment is caused to a workman,' his em-

ployers shall be liable to pay compensation. Now the expression 'injury by accident' seems to me to be a compound expression. · The words 'by accident' are, I think introduced parenthetically as it were to qualify the word 'injury' confining it to a certain class of injuries, and excluding other classes, as, for instance, injuries by disease or injuries self-inflicted by design. Then comes the question, Do the words 'arising out of and in the course of the employment' qualify the word 'accident,' or the word 'injury,' or the compound expression 'injury by accident'? I rather think the latter view is the correct one. If it were a question whether the qualifying words apply to 'injury' or to 'accident,' there would, I think be some difficulty in arriving at a conclusion. I find in s. 4 the expression 'accident arising out of and in the course of their employment.' In s. 9 I find the words 'personal injury arising out of and in the course of his employment,' while in s. 1, sub-s. 2(b), the qualifying words seem to be applied to the compound expression 'injury to a workman by accident.' The truth is that in the Act, which does not seem to have had the benefit of careful revision, 'accident' and 'injury'—that is, injury by accident—appear to be used as convertible terms; for instance, in s. 2 'notice of the accident' has to be given, and that notice is referred to immediately afterwards as 'notice in respect of an injury under the Act.' I come, therefore, to the conclusion that the expression 'accident' is used in the popular and ordinary sense of the word as denoting an unlooked for mishap or an un-

toward event which is not expected or designed."

The question in Fenton v. Thorley was whether a workman was entitled to compensation who, in the performance of his labors in the usual and customary manner, was ruptured by straining to turn a wheel that was stuck.

The doctrine of that case was followed and extended by the House of Lords in Clover-Clayton Co. v. Hughes, [1910] A.C. 242. The workman was suffering from an aneurism in such an advanced state as that it might burst from exertion at any time. While tightening a nut with a spanner the strain, which was not unusual in his work, ruptured the aneurism, from which he died. It was held that the workman was "injured by accident."

We quote from Lord Macnaghten's opinion, as follows: "My Lords, in this case your Lordships have heard a very able and ingenious argument upon the construction of the 1st section of the workmen's compensation acts. I need hardly say that it is not from any want of respect to the learned counsel who advanced it that I pass that argument by. It has been disposed of already. It was advanced and rejected in the case of Fenton v. Thorley, [1903] A.C. 443. There the court of appeal had held that if a man meets with a mishap in doing the very thing he means to do the occurrence cannot be called an accident. There *must be, it was said, an accident and an injury;* you are not to confuse the injury with the accident. Your Lordships' judg-

ment, however, swept away these niceties of subtle disquisition and the endless perplexities of causation. It was held that 'injury by accident' meant nothing more than 'accidental injury' or 'accident,' as the word is popularly used * * *." (Emphasis ours.)

The case of Glasgow Coal Co., Ltd. v. Welsh, [1916] 2 A.C. 1, Ann.Cas.1916E, 161, decided by the House of Lords just a year before the enactment of our first workmen's compensation law, refers with approval to the cases of Fenton v. Thorley and Clover, Clayton v. Hughes. The facts were these:

The respondent, an employee of a colliery, was directed to bale water from a pit which had accumulated because the pump used to remove it had broken down. In performing this work it was necessary to stand in water up to his chest for eight hours. As a result of the "extreme and exceptional exposure" to which he was subjected, he suffered from subacute rheumatism. The question was whether the *disease* was an injury by accident. Separate opinions were rendered by each of the Lords sitting, from some of which we quote:

Viscount Haldane: "* * * Indeed, it is plain that he went into the water to bale it out of the pit under directions from his employer, and he does not appear to have entertained such apprehension of danger to himself as to induce him to disobey those directions. Had he died suddenly while so exposed, say of heart disease caused by the shock, there can be no doubt that this would have given a title to his dependants to claim on the footing of injury from accident. I am unable to see why a claim in respect of a less serious mishap should be excluded by the circumstance that the miscalculated action of entering the water took time to produce its consequences. This miscalculated action of entering the water in the present case must be taken to have constituted a definite event which culminated in rheumatic affection. It was the miscalculation which imported into that event the character of an accident within the meaning of the Act."

Lord Kinnear (after stating that the breaking of the pump, if an accident, was too remote upon which to base compensation):

"* * * The finding which I take to be conclusive is 'that the rheumatism from which the respondent suffered was caused by the extreme and exceptional exposure to cold and damp to which he was subjected on the occasion in question.' * * * On the particular occasion described the man exposed himself, in performance of his duty to his employer, to an extreme and exceptional degree of cold, and damp, the character and effects of which he had miscalculated or through inadvertence had failed to foresee. If the sheriff-substitute thought that this was an untoward and unlooked for mishap which was not expected nor designed, I see no ground in law for disturbing his decision.

"The learned counsel for the appellants argued that in order to satisfy the Act

there must be some distinct event or occurrence which taken by itself can be recognized as an accident, and then that the injury must be shown to have followed as a consequence from that specific event. But this is just the argument that was rejected in Fenton v. Thorley. It is unnecessary to say more; but I venture to add that the argument seems to me to rest upon a misreading of the statute, which can only have arisen from a failure to give any exact attention to the actual words. The statute does not speak of an accident as a separate and distinct thing to be considered apart from its consequences, but the words 'by accident' are introduced, as Lord Macnaghten says, parenthetically to qualify the word 'injury.' The question, therefore, is whether the injury can properly and according to the ordinary use of language, be called accidental. * * * It is said that a disease is not an accident and is therefore excluded from the scope of the enactment. This seems to be suggested by an ambiguity in the use of the word 'accident,' which may either denote a cause or an effect; and the argument, assuming the latter meaning to be intended, is that no injury can be called accidental unless it be a visible hurt to the body, apparently caused by some external force. But there is no support for this notion to be found in the statute."

Lord Shaw of Dunfermline:

"* * * The sheriff finds 'that the rheumatism was caused by the extreme and exceptional exposure to cold and damp to which he was subjected on the occasion in question.'

"I do not see how it can be argued that this finding was not one of fact; nor do I see how, that being so, it did not justify the finding in law that the words of the statute were affirmed, namely, that the appellant sustained 'an injury by accident arising out of and in the course of his employment.'

"Injury by accident is a composite expression. It includes a case like the present, namely, the contraction of disease arising from extreme and exceptional exposure."

Lord Parmoor: "* * * The immersion in water, under conditions of extreme and exceptional exposure to cold and damp, may be regarded either as an unforseen, or an untoward, event, and in either alternative as an accident. This being so, it was within the competency of the sheriff-substitute to find in favour of the respondent. The miscalculation of conditions, or carelessness as to conditions, is a common cause of accident, as in the case of a person being accidentally drowned through miscalculation of the depth of the water into which he has entered, or through carelessness in making no calculation as to its depth. There is no error in law, and this ends the case."

Lord Wrenburg:

"* * * If a man undresses on the beach in order to enjoy a bathe in the sea, goes voluntarily into the water, and

is drowned by reason of the existence of a strong current, no one could deny that his death was accidental, that his death was by accident. In this case his going into the water was not accidental; the existence of the current was not accidental; but there was a factor which caused his death to be 'by accident,' and that was that unintentionally—perhaps by ignorance—he miscalculated the forces with which he had to do; he did not know of the current, or he thought that he was a strong enough swimmer to cope with it. He was wrong. The mishap which resulted from his bathing in this dangerous place was accidental. He had no intention or thought of going to his death. No other person intervened to conduce to the result. The sufferer's death was an unexpected event, an untoward result; it was by accident. * * *

" * * * 'That the rheumatism from which the respondent suffered was caused by the extreme and exceptional exposure to cold and damp, to which he was subjected on the occasion in question.' Suppose the events had been that under directions given by the employer the man had gone into the water, and it had proved unexpectedly to be eight feet deep, and that he had been drowned. No one, I think, would dispute that his death would have been by accident. The accident would have arisen from miscalculation or ignorance as to the depth of the water, by reason of which the man was exposed to danger and was drowned. Is there any difference of principle between the case in which the water went over his head and caused death and the case in which the water extended as high as his chest and caused rheumatism? * * * Here the sequence of the language in the case after the finding which I have quoted shows that the arbitrator's finding is that the rheumatism was an injury caused by the extreme and exceptional exposure to cold and damp; in other words, that the extreme and exceptional exposure to cold and damp was that which caused the personal injury to be by accident. I take this to mean that neither employer nor man anticipated that the cold and damp would have been so extreme as to cause the illness; that the exposure of the man to it was an untoward event; that the result was unexpected; that the outcome was a mishap; and that consequently the injury was by accident."

To bring the English cases to date, we call attention to Fife Coal Co. Ltd. v. Young, decided by the House of Lords, March 14, 1940, and published in the Times Law Reports of March 29, 1940. The facts were as follows: A workman was employed in building pillars to support the roof of the underground workings of a colliery. The height of his place of work was from two and a half to three feet. The crouching position in which he labored daily for more than a month caused repeated pressure on the outside of the right knee over the peroneal nerve, resulting in a condition known as "dropped foot," a paralysis of the muscles of the leg that deprives one of the power to raise

the front part of the foot. The workman, it was held, was injured by accident.

The case of Walker v. Bairds and Dallmellington, Ltd. (1935 S.C. (H.L.) 28, at p. 30) was cited with approval in the Fife Coal Company case. The Lord Chancellor said: "The workman, a colliery foreman, had died from bronchial pneumonia caused by a chill contracted through exposure to cold and water while cleaning a sump. His widow was held entitled to an award on the ground, as Lord Tomlin said, that the disease—namely, the pneumonia—resulted from the sudden and unexpected onset of a chill contracted in conditions which were normal in carrying out his job in the accustomed manner and had been frequently experienced by him on previous occasions without ill results. The onset of the chill was 'an untoward event' and not 'expected or designed.' "

An article by Prof. Francis H. Bohlen entitled "The Drafting of Workmen's Compensation Acts," 25 Harvard Law Review 328, often quoted by the courts, sums up the holding of the British courts in workmen's compensation cases as follows:

"Since the case of Fenton v. Thorley, nothing more is required than that the harm that the plaintiff has sustained shall be unexpected. It is no longer required that the causes external to the plaintiff himself, which contribute to bring about his injury, shall be in any way unusual; it is enough that the causes, themselves known and usual, should produce a result which on a particular occasion is neither designed nor expected. The test as to whether an injury is unexpected and so if received on a single occasion occurs 'by accident' is that the sufferer did not intend or expect that injury would on that particular occasion result from what he was doing. * * * The element of unexpectedness, inherent in the word 'accident' is sufficiently supplied either if the incident itself is unusual, the act or conditions encountered abnormal, or if, though the act is usual and the conditions normal, it causes a harm unforeseen by him who suffers it."

The doctrine of Fenton v. Thorley has been generally referred to with approval by the courts of many American states. The New Mexico statute (Sec. 4 of Ch. 92, N.M.L.1937) had been so construed a number of times by the Supreme Court of Colorado prior to its adoption by New Mexico. On the identical question, in Carroll v. Industrial Comm., 69 Colo. 473, 195 P. 1097, 1098, 19 A.L.R. 107, the Colorado court said: "Our statute used the expressions 'personal injury or death accidentally sustained' and 'injury proximately caused by accident' in providing for what injuries or deaths compensation shall be allowed. By the term 'injury' is meant, not only an injury the means or cause of which is an accident, but also an injury which is itself an accident. The expressions above quoted are the equivalent of 'injury by accident,' which is frequently used in the decisions. The word 'by' may mean 'through the means, act, or instrumentality of.' 9 C.J. 1109. Therefore 'in-

jury by accident' and 'injury caused by accident' are terms or expressions which can be used interchangeably."

The court of Errors and Appeals of New Jersey, in Hentz v. Janssen Dairy Corp., 122 N.J.L. 494, 6 A.2d 409, in construing the same phrase followed the English decisions, citing recent decisions of the House of Lords and other English cases.

While the fact that the phrase had been judically defined by the English courts long before the statute was adopted by New Mexico (Sec. 139-102 N.M.Sts.1929), as well as the fact that our statute was an adaptation of the English Act to our conditions (Palmer v. Farmington, 25 N.M. 145, 179 P. 227), would justify our following their construction; yet being satisfied that such construction is grammatically correct; and as it is more in accord with the spirit of the Workmen's Compensation Acts, it should be followed by us.

Such is the weight of authority in this country. Fidelity & Cas. Co. v. Industrial Comm., 177 Cal. 614, 171 P. 429, L.R.A. 1918F, 856; Columbine Laundry Co. v. Industrial Comm., 73 Colo. 397, 215 P. 870; Industrial Comm. v. Ule, 97 Colo. 253, 48 P.2d 803; Tintic Milling Co. v. Industrial Comm., 60 Utah 14, 206 P. 278, 23 A.L.R. 325; Cherdron Const. Co. v. Simpkins, 61 Utah 493, 214 P. 593; Continental Baking Co. v. Industrial Comm., 92 Utah 438, 69 P.2d 268; Young v. Salt Lake City, 97 Utah 123, 90 P.2d 174; Andreason v. Industrial Comm., 98 Utah 551, 100 P.2d 202; Hentz v. Janssen Dairy Corp., supra; Brown v. Lumbermen's, etc., Co., 49 Ga.App. 99, 174 S.E. 359; McDougal's Case, 127 Me. 491, 144 A. 446; Patrick v. Ham Co., 119 Me. 510, 111 A. 912, 13 A.L.R. 427; Layton v. Hammond-Brown-Jennings Co., 190 S.C. 425, 3 S. E.2d 492; King v. Buckeye Cotton Oil Co., 155 Tenn. 491, 296 S.W. 3, 53 A.L.R. 1086; In re Case of Scrogham, 52 Wyo. 232, 73 P.2d 300; Gilliland v. Ash Grove, etc., Co., 104 Kan. 771, 180 P. 793; Barker v. Shell Pet. Corp., 132 Kan. 776, 297 P. 418; Manning v. Pomerene, 101 Neb. 127, 162 N.W. 492.

■ Much reliance is placed upon that provision of the statute which requires notice to be given by the injured employee to the employer, which states that he "shall give notice in writing of *such accident and of such injury*," etc. The argument is that there must be an accident separate from the injury or else there would be no meaning to this statute. This is not the compensatory statute, in controversy in this case, and it is not material except as it may throw light upon the meaning of Sec. 4 of the Workmen's Compensation Act, supra.

The two statutes are consistent; for in every case of accidental injury there is both an accident and an injury. In the majority of cases the accident and injury are separate, such as injuries resulting from the breaking of machinery, explosions, etc. But there are many cases in which the accident and injury constitute

one happening, such as hernia, blood clots and hemorrhages, resulting from exertions or strain; sprained ankle, overheating, sunstroke, breathing dust, freezing, etc. It is quite evident that in giving notice of the happening, both the accident and the injury are included. In other sections of the act, as hereinbefore noted, a compensable injury is referred to as "injury accidentally sustained," "injury sustained * * * while engaged in the line of * * * duty," "injur[y] sustained in extra-hazardous occupations," "accidental injury," etc., each of which indicates that no distinction between injuries from an agency separate from the accident and an accidental injury was intended.

The states of Georgia, Maine, South Carolina, Tennessee, Wisconsin, Wyoming and Utah have compensatory statutes substantially like that of New Mexico, and a notice statute identical in meaning with that now being considered. The courts of each of these states have construed the compensatory statute exactly as here, and no significance was given to the fact that the notice statute required a report of the accident and of the injury. Brown v. Lumbermen's, etc., Co., supra; McDougal's Case, supra; Patrick v. Ham Co., supra; Layton v. Hammond-Brown-Jennings Co., supra; King v. Buckeye Cotton Oil Co., supra; In re Case of Scrogham, supra.

We are satisfied with the conclusions of these courts, and hold that "injury by accident" means nothing more than an accidental injury, or an accident, as the word is ordinarily used. It denotes "an unlooked for mishap, or an untoward event which is not expected or designed." Fenton v. Thorley, supra.

That the injury to appellant occurred in the course of his employment is not questioned. The only question is whether, consistently with our construction of the compensation statute, such injury was "proximately caused by accident," or was accidental.

It is asserted that appellant's injury was not accidental, in that it could not be traced to a definite time, place, and cause. The injury to appellant occurred upon a day certain, and was the proximate result of breathing poisonous fumes and gases in excessive quantities for seven specific hours on that particular day, while working in the course of his employment. It is not necessary that the injury should result momentarily, to be accidental. It may be the result of hours, even a day, or longer, of breathing or inhaling gases, depending upon the facts of the case. Columbine Laundry Co. v. Industrial Comm., supra; Industrial Comm. v. Ule, supra; Sullivan Min. Co. v. Aschenbach, 9 Cir., 33 F.2d 1; Riley v. City of Boise, 54 Idaho 335, 31 P.2d 968; Ross v. Ross, 184 Okl. 626, 89 P.2d 338; Moore v. Rumford Printing Co., 88 N.H. 134, 185 A. 165; Zwiercan v. International Shoe Co., 87 N.H. 196, 176 A. 286. The time, place and cause were definite and certain.

It is asserted that appellant's injury was not an accident, because he inhaled the fumes and gases that caused him to have pneumonia, while performing labor in the course of his employment, and there was no "unlooked for event which was not expected or designed", as an accident is usually defined.

When an injury results from some fortuitous happening, such as the breaking of machinery, explosions, collisions, etc., the accidental nature has never been questioned. But in cases where there was no accident separate and distinct from the injury that caused it, the courts are not in accord. Such are strains causing back injuries, ruptures, blood clots, hemorrhages, etc.; ordinarily the unintended result of an intentional act of the person injured. These injuries are also held compensable by all courts so far as we are advised, when received in the course of the workman's employment, since Fenton v. Thorley.

But the courts are not in harmony on the question of whether injuries suffered by workmen to which they did not contribute by any specific act and which happened while they were performing their usual and customary duties under usual, ordinary and expected conditions and circumstances, are injuries "by accident." Such are injuries or death caused by lightning, exposure to the elements and changing temperatures; sunstroke; breathing fumes, gases, dust, etc.; and from diseases resulting therefrom. The majority of the courts that have decided the question have applied to it the doctrine of Fenton v. Thorley, and held such injuries are by accident. To the writer of this opinion it appears that no other conclusion could consistently be reached, since we accept the construction of the statute as enunciated in that case.

The Supreme Court of Colorado, whence came our statute, has held that the statute contemplates that the injury, not the cause of it, should be unexpected. It was stated in Industrial Comm. v. Ule, supra [97 Colo. 253, 48 P.2d 804], regarding a workman who was disabled from the fumes of a substance called "dope" which he applied to the body and wings of airplanes by a spray gun:

"The exposures to which Ule was subjected on May 21, 22, and 23 were unusual; the number of spray guns used on those days was double the number previously used, and the emission of 'dope' spray correspondingly increased. It produced effects that were not intended, foreseen, or expected; hence it was an accident. * * *

"The fact that Ule had inhaled the 'dope' spray in smaller quantities on previous occasions and had felt the effect thereof does not make the injury caused by the unusual and excessive inhalation on May 21, 22, and 23 any the less an accident."

And In Carroll v. Industrial Comm., supra, it was held that a workman who inhaled dust from pitching hay, which brought on a heart attack that caused

his death, suffered an accidental injury. The Colorado court quoted with approval 25 Harvard Law Review, 340, as follows: " 'Since the case of Fenton v. Thorley, nothing more is required than that the harm that the plaintiff has sustained shall be unexpected. * * * It is enough that the causes, themselves known and usual, should produce a result which on a particular occasion is neither designed nor expected. The test as to whether an injury is unexpected, and so, if received on a single occasion, occurs "by accident," is that the sufferer did not intend or expect that injury would on that particular occasion result from what he was doing.' "

Since we adopted the Colorado statute we should not lightly refuse to follow its construction by the Supreme Court of that state.

Under similar facts, the authorities generally uphold our conclusion, that the appellant suffered a compensable injury by accident. See the British and other cases above cited, and Tintic Milling Co. v. Industrial Comm., supra (latent tuberculosis aggravated by gases); Maryland Casualty Co. v. Rogers, Tex.Civ.App., 86 S.W.2d 867 (pneumonia resulting from the inhalation of dust); Maryland Cas. Co. v. Broadway, 5 Cir., 110 F.2d 357 (welder died of pneumonia caused by inhalation of sulphur dioxide gas escaping from pipes which he was welding); Waite v. Fisher Body Corp., 225 Mich 161, 196 N.W. 189 (pneumonia resulting from a bruised toe, traced by the evidence to the injury); Birdwell v. Three

Forks, etc., Co., 98 Mont. 483, 40 P.2d 43 (workman cleaning a kiln chute suffered a heat stroke caused by excessive heat); Johnson v. Industrial Comm., 63 Ohio App. 544, 27 N.E.2d 418 (the laborer subjected to excessive heat in a storage tank, resulting in pneumonia, from which he died); Senlock v. Philadelphia, etc., Co., 104 Pa. Super. 156, 158 A. 663, (death from pneumonia caused by extraordinary exposure in cold water); Anderson v. Industrial Comm., 116 Wash. 421, 199 P. 747 (claimant cut his foot with an axe. In going home he was exposed to excessive cold, from which he developed pneumonia and died); Bergstrom v. Industrial Comm., 286 Ill. 29, 121 N.E. 195; Robertson v. Industrial Comm., 114 Or. 394, 235 P. 684; Brown v. Watson, 7 B.W.C.C. 259; Pow v. Southern Const. Co., 235 Ala. 580, 180 So. 288 (a construction engineer, securing engineering data was required to wade in water, which resulted in pneumonia, from which he died); Walsh v. River Spinning Co., 41 R.I. 490, 103 A. 1025, 13 A.L.R. 956 (death from heat stroke caused by excessive heat in a boiler room); Lane v. Horn & Hardart Baking Co., 261 Pa. 329, 104 A. 615, 13 A.L.R. 963 (heat prostration); Lacey v. Washburn & Williams Co., 105 Pa.Super. 43, 160 A. 455 (workman employed in a refrigerator room for an hour resulting in pneumonia, from which he died); New River Coal Co. v. Files, 215 Ala. 64, 109 So. 360 (coal miner injured from breathing carbon dioxide gas); Brown v. St. Joseph Lead Co., 60 Idaho 49, 87 P.2d 1000 (rock driller in a silica mine be-

came sick with silicosis from breathing dust); Beaver v. Morrison-Knudsen Co., 55 Idaho 275, 41 P.2d 605 (miner injured by revival of latent tuberculosis, due to inhaling silica dust); Utilities Coal Co. v. Herr, 76 Ind.App. 312, 132 N.E. 262 (workman afflicted with chronic heart disease inhaled smoke in a mine, which proved fatal); Joliet v. Industrial Comm., 291 Ill. 555, 126 N.E. 618 (workman, an engineer, was overcome by heat and died of heat stroke while working in a heated room on a hot day); Gilliland v. Ash Grove, etc., Co., 104 Kan. 771, 180 P. 793 (workman breaking rock with a heavy sledge suffered a pulmonary hemorrhage and died); Cannella v. Gulf Refin. Co., La.App., 154 So. 406 (truck painter became suddenly ill from acute lead poisoning); Adler v. Interstate Power Co., 180 Minn. 192, 230 N.W. 486 (stoker in an engine room, subjected to an unusual amount of fumes from coal and coke, from which he died); Leilich v. Chevrolet Motor Co., 328 Mo. 112, 40 S.W.2d 601 (traveling salesman removed a flat tire from his automobile, in his garage, jacked up the car and started running the engine, and died from monoxide gas poisoning); Schulz v. Great A. & P. Tea Co., 331 Mo. 616, 56 S.W.2d 126 (deceased was overcome by heat while performing labor for master); Dove v. Alpena Hide & Leather Co., 198 Mich. 132, 164 N.W. 253 (employee breathed dust from handling hides in his usual labor, causing septic infection, resulting in death); McNeely v. Carolina Asbestos Co., 206 N.C. 568, 174 S.E. 509 (workman inhaled asbestos dust in performing his regular duties, resulting in pulmonary asbestosis); Dondeneau v. State Indus. Acc. Comm., 119 Or. 357, 249 P. 820, 50 A.L.R. 1129 (employee's eyes became inflamed from smoke in fighting a forest fire, which resulted in glaucoma); Tarr v. Hecla Coal & Coke Co., 265 Pa. 519, 109 A. 224 (employee, assisting in putting out a fire, lost his life by asphyxiation); King v. Buckeye Cotton Oil Co., supra (fireman stricken by heat prostration, died of pneumonia); Barron v. Texas Employers' Ins. Ass'n, Tex.Com.App., 36 S.W.2d 464 (tuberculosis brought on by inhalation of hydrogen sulphide gas); Andreason v. Industrial Comm. supra (workman butchering animals contracted disease from contact with diseased meat); Hentz v. Janssen, etc., supra; Ciocca v. National Sugar Refin. Co., 124 N.J.L. 329, 12 A.2d 130; see annotations in 6 A.L.R. 1466; 23 A. L.R. 335; 90 A.L.R. 619, entitled "Injury from Fumes or Gas as Accident or Occupational Disease." Some of these decisions are from courts which hold that the word "accident" in the statute has reference to the cause of the injury, and not the injury itself.

The facts in King v. Buckeye Cotton Oil Co., supra, were in substance, that a fireman, while in the boiler room, was stricken by heat prostration and died in four days, of pneumonia. The room was well ventilated and the boilers in good condition. The court said [155 Tenn. 491, 296 S.W. 5, 53 A.L.R. 1086]: "We do not think, however, that heat exhaustion or heat prostration can be said to be a nec-

essary incident or an expected result of employment as a fireman in a boiler room. * * * The fireman expected to become hot, but he did not expect to become overheated to the point of exhaustion or prostration. The difference may be one only of degree, but we see no reason why such a difference may not make the boundary between the expected or anticipated and the unexpected or fortuitous. Certainly it marked the boundary, in the case of the deceased workman, between safety and misfortune."

It was held that heat prostration, under the facts, was an injury by accident.

We do not decide whether appellant would have been entitled to compensation had his injury been sustained while performing his labor under the usual and ordinary conditions of his employment. On this question the courts are not in harmony.

But his injury occurred under most extraordinary conditions. The finding of the court that the truck in question discharged excessive fumes and gases, compared with other trucks on the job, the breathing of which caused pneumonia, was supported by the witnesses of appellant and appellees. The undisputed testimony in support of the extraordinary conditions under which appellant labored is to the effect that the truck "smoked all over"; that the fumes were so obnoxious that others would not stand near it. Truck drivers following appellant in loading were forced to wait until the smoke cleared away before moving their trucks into its place. The smoke came from the motor as well as the exhaust; it smoked more than any truck one of the witnesses had ever seen. The ordinary truck consumes from two to three quarts of oil a day but this one consumed (as the court found) *four and a half gallons per day.*

Appellee's mechanic foreman in charge of trucks testified:

"Q. As a matter of fact wasn't that truck more or less a joke the way it smoked? Wasn't there a lot of wisecracks made about that truck? A. I will admit it was smoking more than the rest of them. It was an older model. No argument to that.

"Q. Was there any other truck that threw out anywhere near the amount of smoke? A. I would say some smoked as much as fifty per cent or better of what it did.

* * * * * *

"Q. Did you ever notice smoke coming from the motor straight up where the driver would sit? A. I know that that truck smoked in excess of other trucks; more than the other trucks did, * * *."

It is common knowledge that the breathing of fumes and gases by truck drivers performing such labor does not ordinarily cause pneumonia. We have heard of no similar case. That such fumes are deadly poison we know, but under ordinary conditions they are not dangerous when the truck is operated in the open.

The effect of the findings of the court is that appellant was exposed to extraordinary hazards, greater than those of the

community generally, who are engaged in truck driving, and greater than that of any other workman engaged in truck driving on the same job, and greater than ordinarily incident to the labor in which he was engaged.

Under such state of facts the courts generally agree that the injury sustained is by accident, and compensable under Workmen's Compensation Acts. Such is the holding of the English cases (see quotations from Glasgow Coal Co., Ltd. v. Welsh, supra), and that of the American courts where the question has been decided.

The question in Barker et al. v. Narragansett, etc., Ass'n, R.I., 16 A.2d 495, 498; Id., R.I., 17 A.2d 23, was whether a workman who died of acute myocarditis caused by excessive heat and overexertion was injured by accident. The conditions under which he worked were not common to his fellow employees, or to the community in general. The court said: "In the peculiar circumstances of the instant case, the controlling consideration is whether excessive heat, combined with overexertion, due to conditions and manner of labor not usual to the workman in the ordinary course of his employment resulted in his injury and death. The respondent argues that Barker, when stricken, was engaged in doing his ordinary work under a heat condition which was common to the whole community. Even if this view were reasonable, still the evidence before us is reasonably susceptible to the following different and opposite conclusions: First, that while Barker at the time of his injury was engaged in doing his ordinary work, meaning the work of an electrician, he was not then engaged, nor had he been engaged for a considerable time prior thereto, in doing such work in the manner and under conditions that usually existed in the ordinary course of his employment, and no other workman at that place was working under those same conditions. Secondly, that while the heat condition in a sense may have been common to the whole community, yet that heat condition was intensified and thereby rendered excessive by the manner and in the places in which Barker had been and was actually working when stricken."

In Lumbermen's Mutual Cas. Co. v. Lynch, 63 Ga.App. 530, 11 S.E.2d 699, 701, it was held that a workman who inhaled fumes while doing electric welding in a manhole, under unusual conditions, and which caused edema of the lungs, was injured by accident and was entitled to compensation. The court said: "Although the decisions on the subject are not uniform and can not be entirely reconciled, generally diseases resulting from unusual and unexpected inhalation of gas fumes or dust result from accident within the meaning of the compensation act."

In Todd Dry Docks v. Marshall, 61 F.2d 671, 672, the Circuit Court of Appeals of the Ninth Circuit held, in construing the Longshoremen's Act, 33 U.S.C.A. § 901 et seq., that "a disease, which is not the ordinary result of an employee's work * * * but contracted as a direct result of *unusual circumstances* connected therewith, is to be

considered an injury by accident, and comes within the provisions of acts providing for compensation for personal injury so caused."

The question in Arquin v. Industrial Comm., 349 Ill. 220, 181 N.E. 613, 615, was whether a physician's death was accidental, who, while on duty as an interne in the contagious ward of a hospital, contracted epidemic meningitis, from which he died. The court said: " * * * If an injury is a result such as follows from ordinary means voluntarily employed and in a not unusual or unexpected way, it cannot be called an injury effected by accidental means, but, if in the act which precedes the injury, though such act be voluntarily employed, something unforeseen or unexpected or unusual occurs which produces the injury, then such injury has resulted through accidental means."

It was held in Rinehart v. Stamper Co., 227 Mo.App. 653, 55 S.W.2d 729, 731, that pneumonia contracted by a workman who was required to go into a refrigerator while he was perspiring freely, and which resulted in pneumonia, entitled him to compensation. The court said: "Under the allegations it might reasonably be found that plaintiff sustained violence to the physical structure of his body by being unduly exposed to extreme cold, and that pneumonia naturally resulted therefrom."

The question in McCarthy v. American Car & Foundry Co., Mo.App., 145 S.W.2d 486, 488, was whether an engineer who suffered heat exhaustion from shoveling coal into an open fire box was injured by accident. In holding that the injury was by accident, the court said: "It is the settled law of this State that heat exhaustion under such conditions is an accident. * * And, that such accident resulting in injury or death is compensable when the character of the employment is of a nature which intensifies the risk and subjects the employee to a greater hazard than that faced by other people in the same locality."

To the same effect is Juhl v. Hussman-Ligonier Co., Mo.App., 146 S.W.2d 106.

In Gates v. Central City Opera House Ass'n, Colo., 108 P.2d 880, 883, the question was whether an artist employed to paint murals on the outside wall of an arcade, who froze his thumb and finger, had suffered an injury by accident. The court said: "By reason of his employment as an artist at the time and place, claimant was peculiarly exposed to the risk of freezing. Moreover, his exposure and risk were greater than would be that of a person in the community ordinarily engaged in doing outdoor work in cold weather. No other inference can properly be drawn from the evidence. * * * In the present case 'the conditions under which the work required to be performed' by claimant were unusual and not common to the community, and this constituted the causal connection between the work he was required to perform and the resulting injury."

It is asserted that the inhalation of the fumes and gases only reduced appellant's resistance to pneumonia, and was not in

fact the proximate cause of the disease. In other words, that the liability could not go further than for the reducing of his resistance, and this was not compensable.

The same question was decided in Crane Elevator Co. v. Lippert, 7 Cir., 63 F. 942, 948. A boy, through the negligence of another, fell and bruised his arm, from which bruise a tubercular condition was set up. It was claimed that while the company might be liable for the bruise they were not liable for the tubercular condition because the germs which caused the disease were in his body. The Circuit Court of Appeals held that it was liable, and said:

"The plaintiff in error further contended on the oral argument that the injury sustained by the defendant in error was not the proximate result of his fall, but arose from the presence of tuberculous germs in his system. It was the hurt occasioned by the fall which afforded an opportunity for the active development of the poisonous germs which had theretofore been innocuous. It was the wrongful act which gave rise to the consequent injury, and it is not apparent that the injury would have occurred in the absence of such cause. In the case of [Milwaukee & St. P.] Railway Co. v. Kellogg, 94 U.S. 469, 475 [24 L.Ed. 256], it is said:

" 'When there is no intermediate, efficient cause, the original wrong must be considered as reaching to the effect, and proximate to it. The inquiry must therefore always be whether there was any intermediate cause, disconnected from the primary fault, and self-operating, which produced the injury.'

"The wrongful act of the plaintiff in error subjected the injured party to other and dependent causes, which were set in motion by the original hurt."

To the same effect is Jones v. Caldwell, 20 Idaho 5, 116 P. 110, 48 L.R.A.,N.S., 119.; McCahill v. New York Trans. Co., 201 N.Y. 221, 94 N.E. 616, 48 L.R.A., N.S., 131, Ann.Cas.1912A, 961; Owens v. Kansas City, etc., R. Co., 95 Mo. 169, 8 S.W. 350, 65 Am.St.Rep. 39; Ohio & M. Ry. Co. v. Hecht, 115 Ind. 443, 17 N.E. 297.

The case of Robinson v. National Life & Acc. Co., 76 Ind.App. 161, 129 N.E. 707, 708, decided this question. It was an accident insurance case but the point was decided. The insured suffered a fall, causing a compound fracture of the left femur. About 10 days later he died of lobar pneumonia, caused by the fracture. The court, in holding the insured died from an accident, said:

"We do not view the pneumonia as one of two independent causes, the sum of which produced the death of the insured, but rather as one of the links in the chain of causation, and that the accident and the injury resulting therefrom is the proximate cause. * * *

"On account of his depleted and weakened condition his resistance to disease was lowered, and he was rendered more susceptible to pneumococcus germs than if

he had not been injured. Said pneumonia was neither traumatic nor septic, but was caused by infection with pneumococcus germs, and it eventually resulted in his death. The pneumonia was the natural sequence to his condition resulting from the injury which he received as aforesaid. * *

"It is a well-known fact of medical science that pneumococcus germs are generally present in the respiratory tract of healthy bodies, but that they are innocuous because of the resisting power of such healthy body, and become active only when the lung tissues are so debilitated as to be unable to resist their attack. If the vital resistance has suffered, as by disease or emaciation, the attack of the germs is facilitated and pneumonia is more readily produced. McFarland's Pathogenic Bacteria and Protozoa (8th Ed.) 445; Strumpell, vol. 1, 242. From this we readily conclude that the pneumonia of the insured was not the result of an accidental contagion, but of the activity of the pneumococcus germs, ever present, upon the lung tissue which had been weakened as a result of the injury.

"It is contended by appellee that the death of the assured did not result directly and independently of all other causes from the bodily injury, but that it was the direct and immediate result of the sum of two causes, namely, his said injury and pneumonia."

In Kovaliski v. Collins Co., 102 Conn. 6, 128 A. 288, 289, the question was before the court and it was held that a tool grind-er whose resistance was weakened by his work, which resulted in tuberculosis, was compensable.

"When the injury (the weakened resistance to infection) arises in the course of and out of the employment, then every consequence which flows from it likewise arises out of the employment. 'The chain of causation may not be broken. Every injurious consequence flowing from it is a part of this chain. * * * All physical consequences and disease result from an injury when there is a causal connection between them.' Larke v. Hancock Mut. Life Ins. Co., 90 Conn., [303], 311, 312, 97 A. 320, L.R.A. 1016E, 584."

If the appellant had been struck in the chest with a stone, the effect of which had been to lower his resistance so that pneumonia resulted, no one would question but that it was an accident. He was struck in the respiratory organs by the finer substance of fumes and gases, with the same effect. We see no material difference in the two causes. Such was the reasoning of Lord Birkenhead in Grant v. Kynoch, [1919] House of Lords, A. C. 765.

The case of Linnane v. Aetna Brewing Co., 91 Conn. 158, 99 A. 507, L.R.A. 1917D, 77, followed by Hoag v. Kansas City Ind. Laundry Co., 113 Kan. 513, 215 P. 295, supports appellee's contention that a "germ disease" cannot be an accident or the result of one, unless the result of a traumatic injury. The former case was "overruled" by the legislature of Connecticut. Dupre v. Atlantic Refin. Co., 98 Conn. 646,

120 A. 288. The Kansas case stands alone so far as our research has disclosed; and it would seem to have but little weight since Barker v. Shell Pet. Corp., 132 Kan. 776, 297 P. 418, in which the British doctrine of Fenton v. Thorley is followed. See annotations under headings "Pneumonia" 20 A.L.R. 66 and 73 A.L.R. 539; "Influenza" 20 A.L.R. 57 and 73 A.L.R. 528; "Tuberculosis" 20 A.L.R. 75 and 73 A.L.R. 547; and "Injury from Fumes and Gases" 6 A.L.R. 1466, 23 A.L.R. 335 and 90 A.L.R. 619.

It would be futile to attempt to reconcile the decisions on this question. It cannot be done. But some of the confusion results from the fact that a number of the states (among them New York, Missouri, Washington, Kentucky, and Ohio) have statutes defining the word "accident" or "accidental injury," which necessarily affects the decisions of their courts.

The courts of New York have construed their statute as requiring an injury caused by an accident distinct therefrom, to authorize compensation; and that an injury (not traumatic) resulting from the usual and accustomed labor of the workman is not compensable. But the courts of that state recognize the rule that where the injury is caused by some unusual circumstance connected with the employment, it is compensable. This was decided in Re Claim of Veronica Robbins et al. v. Enterprise Oil Co., Inc., et al., 252 App.Div. 904, 299 N.Y.S. 837, Id., 253 App.Div. 855, 1 N.Y.S.2d 670, and affirmed in 278 N.Y. 611, 16 N.E.2d 123. There a workman was engaged in his regular work of changing gears of an automobile, which required about three hours work while lying on his back. While so engaged *he was subject to and exposed to a draft,* which caused pneumonia, from which he died.

The case of Lanphier v. Air Preheater Corp., 278 N.Y. 403, 16 N.E.2d 382, decided a month later by a divided court, holds that pneumonia was compensable only when the disease was assigned to something catastrophic or *extraordinary.* The inference is that the draft of wind that caused pneumonia of the workman in the Robbins case was such an extraordinary occurrence as to constitute the disease an injury by accident; though it is hard to reconcile the two cases. But the rule upon which this case is decided is recognized in both.

■ It appearing from the findings of the court that appellant was subjected to unusual and extraordinary conditions and hazards not usual to his employment, and to which no other of the workmen on the job was subjected; and that such unusual and extraordinary conditions and hazards were the proximate cause of his attack of pneumonia. We conclude that his injury, including that resulting from pneumonia, was an injury by accident.

We do not decide whether appellant would have been entitled to compensation if his injury had occurred while performing the usual and ordinary labors incident to his employment, and not under the extraordinary conditions found by the court;

that is, whether the injury and not the cause of it must be unintentional and unexpected to constitute an injury by accident. The facts of this case do not require it, and we express no opinion on the question.

The judgment will be reversed and cause remanded to the district court with instructions to set aside the judgment, ascertain the amount of compensation to which appellant is entitled and enter judgment therefor, together with reasonable attorney's fees for the trial in the district court, and $400 attorney's fees for the appellant's presentation of the case in this court.

It is so ordered.

ZINN, SADLER, and MABRY, JJ., concur.

BICKLEY, Justice (dissenting).

I find it impossible to agree that the majority opinion in this case correctly states the law applicable to the facts in the case before us.

Much has been said in the majority opinion relative to the views of Lord Macnaghten in Fenton v. Thorley as appraised by Professor Bohlen in 25 Harvard Law Review, and I am pleased to note that the majority apparently do not accept the doctrine credited to Fenton v. Thorley that: "* * * nothing more is required than that the harm that the plaintiff has sustained shall be unexpected. It is no longer

required that the causes external to the plaintiff himself, which contribute to bring about his injury, shall be in any way unusual; it is enough that the causes, themselves known and usual, should produce a result which on a particular occasion is neither designed nor expected."

Our discussions in conference lead me to the belief that my brethren, though disclaiming it, are nevertheless unconsciously following Lord Macnaghten's dictum in Fenton v. Thorley, and are able to find an injury by accident in the unexpectedness of the injury itself alone.

If they do not do this, they adopt a theory never herein contended for by appellant.

It is not unusual to *sustain* the trial court upon some theory other than the one adopted as a basis of its decision, but it being rather extraordinary to *reverse* the lower court upon a theory of the law and facts not contended for by the appellant, I think it proper to point out that the appellant (claimant) plants himself squarely upon the theory of Lord Macnaghten's dictum in Fenton v. Thorley, and upon that alone. He cites and asks us to follow the reasoning in Sullivan Mining Co. v. Aschenbach, 9 Cir., 33 F.2d 1, 2, from which I quote liberally, supplying italics because appellant's contention is there strongly set forth, and because it, in turn, cites Carroll v. Industrial Commission (relied upon by the majority), wherein the Colorado court, though divided, followed Fenton v. Thorley:

"With apparent approval the court quotes from Carroll v. Industrial Commission, 69 Colo. 473, 195 P. 1097, 19 A.L.R. 107, as follows: 'Since the case of Fenton v. Thorley, nothing more is required than that the harm that the plaintiff has sustained shall be unexpected. * * * It is enough that the *causes, themselves known and usual,* should produce a result which on a particular occasion is neither designed nor expected. The test as to whether the injury is unexpected, and so, if received on a single occasion, occurs "by accident," is that the sufferer did not intend or expect that injury would on that particular occasion result from what he was doing.' * * *

" 'The statute does not speak of an accident as a separate and distinct thing to be considered apart from its consequences, but the words "by accident" are introduced, as Lord Macnaghten says, parenthetically to qualify the word "injury." ' * * *

" 'There is no language in the act authorizing the conclusion that as a prerequisite to the right of compensation the claimant must show that he has suffered some injury resulting from some sudden *or* violent accident.' " (Italics mine.)

Appellant puts all his eggs in this basket, distinctly disclaiming that there is any accident in the case, unless the injury alone may be regarded as an accident. So if we do not agree with appellant on this essential proposition, I do not conceive it to be our duty under the principles of review to strive to reverse the judgment of the trial court upon some facts consideration disclaimed by appellant. And I may add that I do not discover that appellant is prejudiced by such disclaimer. The facts compelled him to assume that position. These principles of review are all sufficiently important to warrant me in setting forth fully appellant's contention. His assignment of error No. 2 is as follows: "(2) The Court erred in refusing plaintiff's requested conclusion of law No. 1, 'That the inhalation of smoke and gases emitted by the truck motor during and in the course of the employment of C. R. Stevenson was an accident within the meaning of the Workmen's Compensation Act of the State of New Mexico.' "

It is in the later abandonment of this assignment of error (except as qualified in the argument) that we get a true picture of appellant's contention. Does the workmen's compensation statute provide compensation for injuries which are accidental only in the sense that the injury itself is unforeseen and unexpected even though there is nothing unforeseen and unexpected in the surroundings and circumstances in which the occupation or the work is carried on and no unexpected event has caused the injury? Or, must the injury be the *result* of an accident in the sense that some unforeseen or unexpected occurrence *caused* the injury? As to the foregoing assignment of error, I quote pertinent portions of appellant's brief, employing such marks of emphasis as may be deemed advisable. He says:

"Plaintiff's second Assignment of Error on the Court's refusal to find in effect that the inhalation of the smoke and gases by Plaintiff was an accident within the meaning of the Workman's Compensation Act *is probably not well taken* without considering in connection therewith that the ensuing *result* and consequences of the inhalation of smoke and gases, said consequences under the popular meaning of the word being an accident.

" * * * It is specifically contended that the fundamental error of the Trial Court arose through the Court's view that bodily injury sustained by inhalation of known gases and fumes in an excessive amount with resulting injury and disability does not constitute an accident. Or, stated in another way, on the facts, and evidence introduced in the cause, the Court should have found for the Plaintiff on account of the *results* of the inhalation of gases and fumes with the consequent disability being an accident. * * *

"There are two or three questions which appear to arise in this Act. Does the Legislature intend that the use of the word 'accident' in sub-Sections A and B have as broad a meaning as the provision preceding sub-Section A in which the employee is deprived of any other right of action and the employer and all others are relieved of any liability for 'personal injury accidentally sustained'? In a popular use of the word the personal injury was 'accidentally' sustained. If the word 'accident' as appearing in sub-Sections A and B and C is to be interpreted in a broad sense to include *the result as being an accident* independent of whether the *cause* of the injury was in itself an accident, then the workman has received benefits covering the same scope as that from which the employer and others have been absolved from liability.

\* \* \* \* \*

"In the instant case the truck which burned four and one-half gallons of oil in the course of seven hours and which emitted unusual quantities of smoke and fumes was driven by the claimant only for the seven hour period and during which period he inhaled fumes and gases from the truck which caused the pneumonia. *Of course the claimant knew he was inhaling the fumes and gases* but he did not expect or *foresee the result*. In common parlance or by popular conception what *really occurred* constituted an accident." (Italics mine.)

In my view, the only way appellant could prevail would be upon the basis of the proposition he urges. While the majority have apparently rejected appellant's contention, as I do, they have indulged much argument in support of it, and I think a first duty of mine is to present the opposing view.

I think it proper to say that in the same essay quoted by the majority from the Harvard Law Review article, Professor Bohlen expressed the opinion that, "The English courts, in their efforts to remedy the omission of Parliament to provide relief for workmen incapacitated by disease,

have opened a wide door to claims of a highly litigious character," and continued: "At first glance there appears little or no abstract justice in giving relief to one whose physical structure is violently deranged while at work, and denying it to one who is incapacitated by disease clearly proven to have been contracted in his employer's service. But there is a great practical difference between the two. Where there is a distinct change in the physical structure of the plaintiff, it is in the vast majority of cases possible and even easy to show some definite occurrence in the course of his service which has produced it, or at least the injury is generally one not likely to result from any other cause. The difficulty which will arise if compensation is allowed for disease lies in the fact that not only its existence but its origin can as a rule be proved only by the statement of the sufferer himself, corroborated by the testimony of his physician, which usually goes no further than a statement that the disease *might* be caused by some incident of the employment. Such claims are not only particularly easy to fabricate, but there is a great tendency in a sufferer to ascribe, without conscious dishonesty, his illness to some cause from which he may hope to obtain relief. But even if they are honestly put forward, the success or failure of such claims must depend upon a highly doubtful issue of fact. If such claims be allowed there will be a natural tendency on the part of every workman who suffers from disease to ask the opinion of the court whether it arose out of the business, and even where it is fairly clear that the illness did so arise, the interest of the employer will naturally induce him to contest the claim in the hope that the opinion of the court may be in his favor."

To my mind the Supreme Court of Arizona, in Pierce v. Phelps Dodge Corporation, 42 Ariz. 436, 26 P.2d 1017, 1020, completely refuted the reasoning of Lord Macnaghten in Fenton v. Thorley, saying of the House of Lords' decision in that case: "But it failed apparently to see that the only possible effect of the use of the words 'injured by' in the phrase is to establish that the accident referred to therein is the cause and not the effect. The injury referred to is obviously a result. If, then, in this connection the word 'accident' is also a result, it is tantamount to saying that the phrase means 'an injury by injury' or a 'result by a result.' Notwithstanding our respect for the decisions of so eminent a tribunal and the similarity of the language in the two acts, we cannot believe that our Legislature when it adopted our Compensation Act intended to attribute to ordinary words such an absurd meaning. If, on the other hand, the phrase was intended to mean a result from a certain kind of cause, it is intelligible and has a fixed and definite application. Had our Legislature intended that the words 'injury' and 'accident' both meant a result, it should and doubtless would have joined them by the conjunction 'or' rather than the preposition 'by.'"

The court quotes from Honnold Workmen's Compensation Laws, Vol. 1, page 274: "The word 'accident' refers to the cause of the injury, and it is here used in its ordinary and popular sense, as denoting an unlooked for mishap, or an untoward event, which is not expected or designed by the workman himself, as a physiological injury as a result of the work he is engaged in, an unusual effect of a known cause, a casualty. It implies that there was an external act or occurrence which caused the injury or death. It contemplates an event not within one's foresight and expectation resulting in a mishap causing injury to the employee."

It is quite interesting to note that the English courts have been on both sides of the question. Prior to Fenton v. Thorley, the holdings were similar to that in Pierce v. Phelps Dodge Corporation, supra, and then, just lately, the House of Lords, in Fife Coal Company, Limited v. Young, decided March 14, 1940, reported in The Times Law Review, March 29, 1940, at page 508, after many years of grief in attempting to apply Lord Macnaghten's pronouncement, swung away substantially from that view and came more nearly to the view expressed by the Arizona Supreme Court in the Pierce case, namely that the injury must be caused by an accident.

A few excerpts from this late opinion will show the basis for the statement I have just made. Lord Caldecote, in explaining several cases decided in favor of the employer, said: "In all of them the facts were such as to make it impossible to identify any event which could, however loosely, be called an accident. In these cases the workmen failed, not because a disease is outside the purview of the Workmen's Compensation Act altogether, but because the burden of proof that there had been an accident was not discharged."

Again referring to another case, Lord Caldecote said: "The case is merely an illustration of the necessity of establishing facts which justify a finding that the injury was due to some specific unlooked-for mishap or untoward event. Where those facts are not proved the workman cannot succeed, and it makes no difference whether the incapacity is due to such an injury as a rupture or sprain or to a disease."

Lord Atkin concurring, speaking of what is necessary for recovery by the workman, said: "It is a *physiological change* brought about *by an undesigned, untoward event* happening in the employment, * * *." (Italics supplied.)

And again: "(2) It is necessary to emphasize the distinction between 'accident' and 'injury,' which in some cases tends to be confused. No doubt the more usual case of an 'accident' is an event happening externally to a man. An explosion occurs in a mine, or a workman falls from a ladder. But it is now established that, apart from external accident, there may be what I have called internal accident. A man suffers from

rupture, an aneurism bursts, the muscular action of the heart fails, while the man is doing his ordinary work, turning a wheel or a screw or lifting his hand. *In such cases it is hardly possible to distinguish in time between 'accident' and injury.* The rupture which is accident is at the same time injury from which follows at once or after a lapse of time death or incapacity. *But the distinction between the two must be observed.* The incidence of a bacillus may be an accident, and an accident arising out of the employment, as in the anthrax and the streptococci from bone dust cases. *In such cases the employment gives rise to the bacillus: the fact that it finds a suitable entrance in an existing wound, scratch, or other orifice which themselves are not due to the employment is irrelevant.* They may be 'accidental,' but if that accident is not related to the employment it matters not. On the other hand, the employment may give rise to the wound or scratch through which a non-employment bacillus enters. In such cases the accident has caused the wound or scratch which is the injury. Without the bacillus the injury is trifling, with the bacillus the injury becomes so aggravated that it causes incapacity or death. Compensation is awarded because the incapacity so caused is the *direct result of the accident,* just as, if negligence causes a wound, the party negligent has to pay in full whether the wound heals or becomes *infected from outside,* excepting possibly cases where it

could be said that a new agency intervened." (Italics supplied.)

It is thus seen that the House of Lords, in the Fife case, has adopted the test suggested by Professor Bohlen in his criticism of Fenton v. Thorley and the earlier English cases following it, namely, that in order for the workman to recover, there must be "a distinct change in the physical structure of the plaintiff" or, as Lord Atkin phrased it, "a physiological change" brought about by accident.

It would be an almost hopeless task to analyze and reconcile the cases which deal with the question. The entire matter being of statutory origin, each case construes its own particular statute, and no case is of any value unless the variations of the statute under consideration be kept in mind. The student will find in Hendrickson v. Continental Fibre Co., 3 W.W.Harr., Del., 304, 136 A. 375, 377, an attempt to bring some order from the chaos of the great mass of cases by dividing the jurisdictions into three separate classes and setting out a further citation of annotations which are the repositories of many citations construing the various acts. In that case the court said that it found no dissent from the basic principle that where an injury is only made compensable under the statute when it is sustained by accident, that it is only embraced within the statute when it is or may be referable to a definite time, place or circumstance (citing cases). This is

followed with an important suggestion which we elaborate, and which is very helpful in our consideration because of the peculiarities of our statute relative to notice. The Delaware Court said:

"Section 3193*l* provides that the employer shall not be liable for compensation in case of injury to an employee unless the employer 'shall have actual knowledge of the occurrence of the injury' or unless notice be given to the employer 'within fourteen days after the accident.' Other provisions cover cases where notice is given 'within thirty days after the accident' and 'within ninety days after the accident.' The section further provides:

" 'Unless knowledge be obtained or such notice given within ninety days after the accident, no compensation shall be allowed.'

"Section 3193x requires an employer to make a report of all injuries to the Industrial Accident Board 'within ten days after knowledge of the occurrence of an accident resulting in personal injury.'

"It must be noted, as argued on the helpful brief of the plaintiff, that the notice prescribed by each section of the Act is not required to be made a certain time prior or subsequent to an injury, but prior to or subsequent to 'an accident.'

"It is apparent that in cases such as the one under consideration no notice as required by the Statute can be given. It is alleged that the disease was contracted not by violence to the physical structure of his body but slowly, gradually and imperceptibly due to the cumulative effect of the chemical."

This same thought is mentioned in Moody v. State Highway Department, 56 Idaho 21, 48 P.2d 1108, 1110, where the court was considering the period of limitations for the filing of claims for compensation, and stated that prior to 1927 the statute had required that a claim for compensation must be made within one year from the date of the *injury,* and that the legislature in 1927 had substituted the word "accident" for the word "injury", and decided that the legislature must have had some object in view in making that substitution, and said: "We must presume that it did not do so idly and without reason. If the Legislature had intended that the commencement of the limitation period, within which claims could be made on employers, should continue to be from the date of the first manifestation of a compensable injury, and not from the date of the accident, it would not have made the substitution. We have no doubt that when the Legislature substituted the word 'accident' for the word 'injury,' it intended to change the date from which the time for making claim should commence to run, and to change that date from the first manifestation of a compensable injury to the date of the accident."

The importance of this notice feature is pointed out by Professor Bohlen in the article referred to as follows: "While there may seem no particular justice in allowing compensation for an injury which

happens on a definite occasion, and excluding compensation for one of gradual growth though just as much the result of the work upon which the sufferer is employed, there are practical considerations which make it desirable to do so. One of the most valuable provisions in the English acts (and one which is being copied in most of the American legislation upon the subject) is that contained in sub-section 2 of section 2, which requires that notice of the accident be given to the employer "as soon as practicable after the happening thereof." The master is thus able personally to investigate the matter soon after its occurrence and verify the justice of the claim or detect any fraud or imposition; and so it conduces to the settlement of well-founded claims without further litigation and leads to the discovery of malingering and simulation. If the date of the accident be known, it is usually possible to find impartial witnesses who have observed and can remember the occurrence. This is certainly so if the injury is due, as it usually is, to some abnormal incident in the operation of the business, to some unusual act of the claimant himself or his fellow workmen, or to some unusual condition of or breakdown in the machinery or plant. Even if there is nothing more than a sudden and unexpected injury the result of some normal and usual operation or condition of the business, this in itself is generally sufficiently striking to make it probable that the circumstances will be observed and remembered by others than the claimant himself. Thus the employer is able by independent testimony to verify the workman's claim, and either settle it at once or to demonstrate so clearly its fraudulent character that the workman will abandon it. And even if the claim is neither settled nor abandoned, but must be litigated, there is apt to be reasonably impartial testimony upon which the court can proceed in awarding compensation."

Sec. 7 of our 1937 Workmen's Compensation Act declares: "Any workman claiming to be entitled under this act to compensation from any employer on account of injury suffered by accident arising out of and in the course of his employment shall give notice in writing of such accident *and of such injury* to such employer within thirty days after the occurrence thereof, unless prevented by such injury or other cause beyond his control, and, if so prevented, as soon as the same may be reasonably done, and at all events not later than sixty days after such accident."

An examination of the workmen's compensation statutes of other states shows that in twenty-six states the requirement of notice is that notice of the *injury* shall be given, and in nine states notice of the *accident* shall be given. Several other statutes require notice of the accident resulting in the injury. So far as our search discloses, the Arizona statute is nearest like ours, the language being that "the employee shall forthwith report such accident *and the* injury resulting therefrom." Code Ariz.1939, § 56-966.

These considerations and the language of our statute impress me with the view that our legislature did not so phrase our statute idly and without reason, but consciously differentiated between "accident" and "injury", and required "notice to be given of each occurrence", and strongly argues that our legislature meant by "accident" some incident or occurrence external to the claimant's physical condition. There is indicated by this legislative thought that an accident may occur at one time and that an injury caused thereby may not find its first manifestation until a later date, so our statute seems to permit the notice to be given within thirty days after the manifestation of the injury has occurred provided the notice also details the accident, and provided further that the manifestation of the injury has occurred and notice given within sixty days after the accident causing such injury. It is possible that in a context where this differentiation does not exist, the way would be open to some confusion in the interpretation of the words "accident" and "injury", but no confusion exists where, as in our act, it so plainly differentiates between "accident" and "injury", and requires notice of each.

The Supreme Court of Idaho handed down its decision in Sonson v. Arbogast, September 28, 1939, 60 Idaho 582, 94 P.2d 672, holding: "Streptococcus pneumonia causing death of dairy employee was not caused by 'accident' so as to make the death compensable, notwithstanding evidence that sudden changes in temperature incurred in the course of employee's duties made the disease a natural consequence of the work, in absence of showing that there was some noticeable mishap, fortuitous incident, or sudden or manifest change in working conditions."

Citing Moody v. State Highway Department, supra, the court said: "A careful analysis of the cases above cited will disclose that none of them is direct authority for the contention that the attack of streptococcus pneumonia from which appellant suffered was the result of an *accident*. In each of the cases mentioned there was either some noticeable mishap or fortuitous incident of which the employee was conscious and following which injury resulted; or else there was some sudden or manifest change in the conditions or surroundings under which the employee was working constituting the accident. Here nothing of the kind is shown. The conditions under which Sonson was working were the same throughout the entire period of his employment. He performed his work in the same manner from day to day and was conscious of no mishap, hazard, or fortuitous ocurrence nor misadventure to him or on his part. Under such circumstances, to say there was an *accident* would be to distort all definitions of the word and do violence to the common understanding of the language used by the legislature in writing sec. 43-1809, I.C.A."

This decision is valuable for the further reason that it contains a collection of cases in which it has been held that a disease (pneumonia for illustration) has, under

some circumstances, resulted from "accident" and another list of cases where, under different circumstances, it was held not to have resulted from "accident".

The foregoing language of the Idaho Court last quoted is particularly applicable to the case at bar. The conditions under which the appellant Stevenson was working were the same throughout the entire period of his employment. He performed his work in the same manner during the entire period and was conscious of no mishap, hazard or fortuitous occurrence nor misadventure to him or on his own part. In fact, Stevenson said in his claim that he really didn't think that the experiences of the day were serious until about three or four hours after he got home. The recitals in the claim of Stevenson for compensation and in the record and in the findings quoted show that Stevenson knew that the truck he was running burned lots of oil, and that the fumes and dust filled his lungs and it was hard to breathe, but he continued to work under these conditions which were not unusual to driving a truck on a road building job. This is no accident. See Prouse v. Industrial Commission, 69 Colo. 382, 194 P. 625, 626, 627.

Because the majority, or in any event the Chief Justice, has placed so much reliance on certain Colorado cases which they cite, I venture to place some emphasis on the Prouse case last cited herein. I quote at length from this case:

"George Prouse on the 15th day of December, 1917, was working with others in the Mitchell mine. They broke into an old, inclosed entry, whence came foul air and dioxide gas. Foul air and gas continued in the mine for some weeks, and until Prouse was compelled to stop work.

"About January 1, 1918, his physician was called to see him, and told him that he was working too hard in bad air, and advised him to lay off. About the 12th or 15th of January the physician was called again, and found him suffering from headache, pain all over, sore throat, and high temperature. He later went back to work, however. Two or three days later the doctor found him much worse; he was taken to a hospital, and about the 17th of February died. The bacteriologist's tests showed septicæmia. Dr. Braden, the physician who attended him, testified that, in his opinion, the immediate cause of death was septicæmia; that a contributing cause was his failure to show the average resistance, and that was 'the result of working in a poorly ventilated atmosphere.' "

The court, in its opinion, states: "The question is whether the death of George Prouse was proximately caused by an accident. There is no evidence that such is the case. The evidence is undisputed that the man died of infection by the germ of septicæmia or pyæmia. There is no evidence as to where he got that germ. There is no evidence that the sudden inhalation of gas and foul air from the old workings caused the disease, but the evidence is that the continued inhalation of foul air in the mine rendered the patient more susceptible

or less resistant to the infection, and so contributed to the death."

In this case there is no evidence as to where Stevenson got the pneumonia germ. There is the same failure of proof of any accident, or of any direct causation between breathing motor fumes and the pneumonia. In this case, the only effect of the motor fumes was a lowering of resistance which made Stevenson more susceptible to the pneumonia germ.

I quote further from the Colorado court:

"* * * Prouse did not die of the poisonous gas; he died of septicæmia or pyæmia, a disease caused by a definite infection by a germ, which has been isolated by the bacteriologists and classified. The only connection which the gas and bad air had with this disease, according to the undisputed testimony of the physicians, was that it depleted the patient's system and rendered him more susceptible or less resistant to it. They do not say that he would not have contracted the disease if he had not worked in the gas, or would not have died of it, nor do they express such opinions.

"Bad air makes a man more susceptible to tuberculosis. Every clerk works part of the time in bad air. If he contracts tuberculosis no physician can deny that the bad air probably made him susceptible, and so was a contributing cause. If so, is he entitled to compensation? So of any other germ disease, e. g., typhoid fever, infant paralysis, meningitis, etc."

It is thus seen that the Colorado Court refused to apply the Workmen's Compensation Act to testimony almost identical with that shown in the record of this case. There was a dissenting opinion in the Prouse case which calls attention to the Carroll case cited by the majority of this Court. It is thus evident that the Colorado Court had before it both the Carroll case and the Prouse case at the same time, and a majority of the Court distinguished between the two cases and thus established in Colorado a principle contrary to the view of the majority here.

In three of the Colorado cases cited by the majority, there is no intervening germ disease which was the actual cause of the injury. The first case cited by the majority is Carroll v. Industrial Commission, 69 Colo. 473, 195 P. 1097, 19 A.L.R. 107. This is the same case cited in the dissenting opinion in the Prouse case. The distinction made by the Colorado Court is that the dust laden air in the Carroll case was the cause of a fatal attack of heart failure. There was no intervening germ disease, which took advantage of lowered resistance.

Likewise in Columbine Laundry Co. v. Industrial Commission, 73 Colo. 397, 215 P. 870, cited by the majority of this Court, there was the feature of a sudden, unusual and excessive amount of motor fumes and the court found an extra large amount present on that morning.

The next Colorado case cited by the majority is that of Industrial Commission v.

Ule, 97 Colo. 253, 48 P.2d 803. In that case, again there was no intervening germ disease and the death resulted from an unusual and excessive exposure of a poisonous dope. It was the dope itself which caused the injury and death.

It is thus seen that the Colorado court, by refusing compensation in the Prouse case and basing its decision in each of the other cases upon the sudden, unusual and excessive exposure, has made exactly the same distinction which I make in this case.

There are many cases cited in the majority opinion. A close examination of these cases permits classification into three general groups. In none of the groups is there the same fact situation which exists in the case at bar.

The majority opinion cites seven cases in which the injury was caused by an unexpected strain. In none of these cases is there any intervening germ disease. The line of reasoning adopted by the courts in awarding compensation in these cases is substantially this: if a man is lifting and his foot slips and he strikes an object, there is clearly an accident; if instead of his foot slipping a bone or muscle in his body slips and injures another part, there is still an accident. In this group of cases where there was no slipping of the muscle or bone, there was always an external trauma. I do not for a moment contend there may not be an internal trauma.

Among the cases cited in the majority opinion may be found another group of cases involving injury from sunstroke, frostbite or other unusual and extraordinary action of the forces of nature. The point involved in this type of cases is not generally whether the injury is accidental. It is usually assumed that they are accidental. The point involved in such cases is whether an injury conceded to be accidental arose out of and in the course of the workman's employment. I am not in disagreement with the proposition that accidental injury occurring from lightning, heat stroke, frostbite or other catastrophic natural causes is compensable when it grows out of the employment. There is no such issue in the case at bar. There was no contention made by Stevenson in the trial below, and no finding by the trial court that any injury resulted from a natural cause.

The third group of cases cited in the majority opinion consists of cases in which a poisonous substance accidentally came in contact with the injured workman, and the action of the poisonous substance on the workman was the injury for which compensation was allowed. A few cases in this group involve injury to the body from a substance not necessarily poisonous but which, under the circumstances of the case, did actually injure the body of the workman; in other words, produced the physiological change referred to by the House of Lords in the Fife case, supra.

The essential difference between this group of cases and the case at bar is that the escape of the substance itself is unusual and unexpected, and thus constituted an accident. In the cases falling in all three of

the groups last mentioned, it would not be difficult to find from the circumstances that the workman had discharged the burden of proof that there had been an accident and that such circumstances would justify a finding that the injury was due to some specific unlooked for mishap or untoward event.

To put it another way, I can readily accept the formula of Lord Caldecote, laid down in the House of Lords' decision in the Fife case, supra, that where the facts are such as to make it impossible to identify any event which could be called an accident the workman cannot recover, but if the facts were such that the workman discharged the burden of proof of showing "that there had been an accident" the workman can recover, or, as Lord Caldecote said in another place in the same opinion, the workman is under the necessity "of establishing facts which justify a finding that the injury was due to some specific, unlooked for mishap or untoward event. Where these facts are not proved the workman cannot succeed."

I also agree with the statement of Lord Atkin in the same case that there may be internal accidents. It is not difficult to agree with Lord Atkin that where a man suffers from rupture, an aneurism bursts, the muscular action of the heart fails, while the man is doing his ordinary work, turning a wheel or a screw or lifting his hand, that in such cases it is hardly possible to distinguish in time between "accident" and "injury". "The rupture which is accident is at the same time injury from which follows at once or after a lapse of time of death or incapacity. *But the distinction between the two must be observed."*

The temptation is great to take up the cases cited by the majority seriatim and distinguish them and to cite with quotations many decisions of American courts contra to the holding of the majority. I think I would not be justified in consuming the time and space necessary to do that.

I will endeavor now as briefly as possible, at the expense of some repetition, to state my views as to the proper interpretation of our statute and its application to the facts in the case at bar. In the first place, as we said in Martin v. Pine Lumber Co., 34 N.M. 483, 284 P. 115, the Workmen's Compensation Act should be liberally construed, still we should not adopt a construction contrary to the evident legislative intent, and to sound reason and policy.

There seems to be little dissent from the basic principle that where an injury is only made compensable under the statute when it results from accident that such injury is only embraced within the statute when it is or may be referable to a definite time, place or circumstance. The authorities are also in accord that the circumstance must arise suddenly. In Echord v. Rush, 1927, 124 Kan. 521, 261 P. 820, 822, the Kansas Supreme Court, which has been very liberal in its holdings in these cases, said: "One of the elements entering into a definition of the word 'accident,' as used in compensation statutes, is that of suddenness. There

must be a time, place, or circumstance when the thing called an accident happened, took place, or occurred. All the courts seem to agree on this, although there may be difficulty in determining whether the thing, or things, being considered constituted an accident."

The Missouri legislature formulated the following definition, thus choosing between the various interpretations announced by the courts: "The word 'accident' as used in this act shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen event happening suddenly and violently, with or without human fault and producing at the time objective symptoms of an injury." Missouri Act, Sec. 3305 (b), R.S.Mo.1929, Mo.St.Ann. § 3305 (b), p. 8238.

I venture to cite this statute because it reflects the general judicial understanding of the meaning of the word "accident", and because it is my opinion that our legislature has accomplished the same end by requiring that the employee claiming compensation shall give notice of both the "accident" *and of the* "injury". It is difficult to read this phrase otherwise than as speaking on the assumption that the injury is one thing and the accident another. This sort of notice is of value because the employer will, receiving the notice of the accident, be afforded an opportunity to inquire among those who were near the workman at the time he states in his notice the accident happened. It is also interesting to note that the Pennsylvania Superior Court, in Micale v. Light, 105 Pa.Super. 399, 161 A. 600, 601, without any statutory definition such as existed in Missouri referred to the necessity of objective symptoms or objective happenings. That was a case where the workman had been working in a wet place, and contracted a chill which brought on pneumonia or was a symptom of the oncoming pneumonia, and the court said: "There was no unusual occurrence or untoward happening about it. The chill, which heralded the attack of pneumonia and was a symptom of the disease, was not the unusual occurrence or untoward happening contemplated by the law. *They refer to objective happenings, not to subjective feelings or symptoms."*

In other words, it is some happening "traceable with reasonable certainty by any reliable method of proof" (Michigan Law Review, post), a "physiological change" which will enable the workman to sustain the burden of proof that there had been an accident resulting in an injury. Fife Coal Co. v. Young, supra.

It is manifest that the notice required by our statute does not relate to some subjective symptoms or feelings of the workman. It seems to me that no argument is required to establish that our legislature could not have intended to require notice of something which was locked solely in the feelings of the workman. The phrases "objective symptoms" and "subjective symptoms" have been employed for a very long time and are well understood. In Ballentine's Law Dictionary it is said of ob-

jective symptoms: "Those symptoms which a physician by the ordinary use of his senses discovers from a physical examination. They are to be distinguished from subjective symptoms, which are those which he learns from the expressions of the patient."

What kind of a notice may a workman give "of the accident and of the injury" when all he complains of is undue fatigue resulting from the working conditions of his employment? Is the fatigue the accident or the injury? Perhaps if the fatigue or exhaustion resulted in a collapse we might have an objective symptom. If he tells his employer merely: "The work under those conditions caused my powers of resistance to disease to become lowered," I do not think he has given notice of an accident and injury therefrom, within the meaning of our statute.

"The cause of injuries to the physical structure of the body is in general, though not always, capable of being shown with reasonable certainty by some fairly reliable method of proof. A man's arm can scarcely be broken or his fingers cut or crushed without those near to him knowing it. Even where the injury is an internal strain or rupture, the sufferer usually shows some immediate external sign of it, and it can be at least shown that he was or was not, at or about the time when the strain was first felt, engaged in work capable of producing it, and, in the majority of cases, the injuries are of a sort which do not usually result from causes

other than those found within the ambit of his work in his master's employment.

"On the other hand, diseases, except of certain very special kinds, may be contracted anywhere, as everyone knows. Everyday experience shows that there is nothing more difficult to say with any precision than where, or when, or how a sufferer contracts his illness. The only method of proof available is for the claimant to prove that he was subjected in his employment to certain conditions to which he attributes his illness. This would be supplemented by the testimony of that most unreliable class of witness, the partisan medical expert, to the effect that such conditions might and in this case probably did cause the illness in question. There is no doubt that in some few cases the evidence might with precision show that the illness must have been caused by certain unsanitary conditions and that the sufferer had not encountered such conditions except in the course of his labor. But such cases are comparatively rare." Workmen's Compensation Acts, Francis H. Bohlen, Columbia Law Review, Vol. 14 (1914), page 563, 648.

These considerations impel a commentator in Michigan Law Review in 1929 (Vol. 19, page 640) to say: "It is for this reason that vocational diseases are not included within the statutes, because the cause of the injury is not traceable with reasonable certainty by any reliable method of proof. To allow such speculative claims would be to encourage fraudulent practices and would contribute to defeating

the broad purposes underlying the compensation laws. The question whether the cause of the injury is traceable by any reliable method of proof should, therefore, determine whether recovery should be allowed under the 'sustained by accident' clause. It is by this test that it must be decided whether an unexpected and unintentional injury constitutes an accident or whether actual physical violence is necessary."

I think these considerations caused our legislature to require that notice be given "of the accident and of the injury", and this provision is of large importance in construing our statute.

It may be that the appellant Stevenson did not expect to get pneumonia while working on this road making job, but in my opinion, no reasonable man could expect to do that kind of work, breathing dust from highway construction and gas and oil fumes and smoke from the road making equipment, without some impairment of his vitality. The lowering of the resistance of appellant was not due to accident. I think in this connection that we should be careful to consider what was the injury. True, the disability was the result of the pneumonia and we may assume that the pneumonia was the result of lowered resistance, but we have got to consider that the lowered resistance was the "injury by accident" if we are to reverse the trial court. I cannot find anything in the findings or in the evidence that the lowered resistance was *caused by accident.* This

lowered resistance, if considered to be the cause of the subsequent disease manifestations not being brought about by accident, is not compensable under the provisions of our Workmen's Compensation Act.

It is perhaps conceding too much to say that lowered resistance merely would be a personal injury, even if caused by accident. At this point it is my intention to review briefly a few cases which, even though they adopt the principles of Fenton v. Thorley generally, are unable to apply the definition of injury by accident formulated in Fenton v. Thorley to disease cases, and particularly to the kinds of diseases of which pneumonia is an example. For instance, in 1923 the Kansas Supreme Court, in the case of Hoag v. Kansas Independent Laundry, 113 Kan. 513, 215 P. 295, had before it a case where an engineer who, as part of his employment, cleaned boilers and was overcome by *excessive heat* of the boilers while cleaning them. He was not prostrated, but was disabled. The disability was that his power of physical resistance was reduced so that pneumonia bacteria immediately became active, and he died of pneumonia seven days later.

It was held that death did not result from personal injury by accident within the meaning of the Workmen's Compensation Act. It is important to note that four years before this decision, the Supreme Court of Kansas, in Gilliland v. Ash Grove Lime & Portland Cement Co., 104 Kan. 771, 180 P. 793, decided a case where a workman's employment required him to

break rock in a quarry with a sixteen pound sledge and load the rock into a car, which was hard work. At noon he was in apparent good health and spirits, and ate all of the lunch which his wife brought to the quarry for him. In the afternoon, while at his working place, and shortly after he was seen beating a large rock with his sledge, he suffered a pulmonary hemorrhage, from which he died before medical aid could reach him, and it was held that the facts stated *indicated* an injury by accident and injury arising out of his employment. The court accepted the definition of injury by accident laid down in Fenton v. Thorley and quoted from the opinions of Lord Macnaghten, Lord Robertson and Lord Lindley. They also reviewed the case of Clover, Clayton & Co. v. Hughes, decided by the House of Lords in 1910. In the later case of Hoag v. Kansas Independent Laundry, supra [113 Kan. 513, 215 P. 296], which is the subject of my present comment, the court referred to the earlier case and distinguished it in the following manner: " 'The circumstances were clearly such that the jury would have been authorized to relate the hemorrhage to blood pressure intensified by vigorous muscular exertion. Relating the hemorrhage to physical exertion, rupture of the pulmonary blood vessel by force from within was as distinctly traumatic as if the canal had been severed by the violent application of a sharp instrument from without.' 104 Kan. 773, 180 P. 794."

It is apparent that the Kansas court was satisfied that the circumstances surrounding the injury were sufficient to have authorized a jury to relate the hemorrhage to an accident.

But in the pneumonia case they are not able to do that. The court says:

"On this occasion the heat was excessive. Excessive in relation to what? Either in relation to the usual temperature when the boilers were cleaned, or in relation to ability to withstand the heat incident to cleaning the boilers. In either case the engineer was inattentive to or misjudged effect of the temperature on his power of endurance. For this reason, what happened to him was unexpected and, if what happened had been identifiable injury then occurring, the event could have been described as personal injury by accident.

"The heat of the boilers overcame the workman. It did not overcome him to the extent of prostrating him, but it disabled him. The disability consisted in weakened power of physical resistance to pneumonia micro-organisms, which at once became active, causing pneumonia, of which he died seven days later. He did not unexpectedly come in initial contact with pneumonia bacteria by washing the heated boilers, as the workman's wounded foot came in contact with infectious matter in foul water, and the pneumonia bacteria were not intruded into his system by washing the heated boilers, as the workman received typhoid bacilli in drinking water. There was no definite physical lesion pro-

ducing a specific kind of disability, such as occurs in heat stroke. There was nothing resembling the sudden hyperemia which resulted from taking ice water into a super-heated stomach. There was nothing resembling hernia, bringing a surgical operation and milk leg in its train. Disease-producing bacterial activity was stimulated by a favorable condition; the favorable condition was lowered physical resistance to cause of disease; the lowered physical resistance was produced by work in excessive heat; and in the last analysis the question is whether unexpected reduction of resistance to a bacterial disease, resulting from performing work under some misjudged or ignored circumstance or condition, constitutes personal injury by accident. The court is of opinion the question should be answered in the negative.

"Pneumonia may follow a surgical operation, and may follow the breaking of a limb. The shock lowers vitality to such an extent that militancy of the bacteria prevails. Lowered vitality may also come from exhaustion from heavy work, from fatigue, from long hours of work, and from a great variety of other causes which expose a workman to pneumonia and other diseases. The result is there is a twilight zone between clear personal injury by accident, which is covered by the Compensation Act, and sickness, which is not covered."

The court continued: "In this case it is proposed to dispense with hurt, and make debility alone stand for injury, in the sense of the statute."

As I have pointed out, the House of Lords in the Fife case, supra (1940), after about forty years' struggle with Lord Macnaghten's dictum in Fenton v. Thorley, has come to the conclusion that they could not "make disability alone stand for injury, in the sense of the statute" and has said that however difficult, the distinction between accident and injury and between injury and incapacity must be observed.

The court's findings in the case at bar may be condensed into the statement that the inhalation of the smoke and gases thrown off by the motor reduced the resistance of Stevenson to such an extent that the pneumococci germs were enabled to multiply and become active in the body of Stevenson, resulting in pneumonia. The court finds that the truck that Stevenson was operating had been discharging a larger amount of fumes and smoke than other trucks on the same job, but that there was no unusual or excessive amount of fumes and smoke given off by the truck No. 54 on March 19th, the amount of fumes and smoke given off by the truck being substantially the same as the amount given off for a period of approximately thirty days. The court further found, "There was no accident and no unusual or unexpected occurrence on that date." The evidence fully supports this finding, and it is impossible to find any sudden or violent upset to the physical structure of the claim-

ant Stevenson on that date. Stevenson made no complaint during the entire day to anybody about the work he was doing, and in his claim for compensation says: "I told the grade foreman, Dick Gentry, that I was feeling badly that night when I came into Roswell after work. I did not tell him what made me so sick because I didn't really think it was serious until about three or four hours after I got home." This is like the Kansas case of Hoag v. Kansas Independent Laundry, supra, where compensation was denied.

The case of Landers v. City of Muskegon, 196 Mich. 750, 163 N.W. 43, 44 L.R. A.1918A, 218, is useful at this point. In that case a city fireman, a part of whose regular duties it was to help extinguish fires, and in doing which it was not unusual for him to get wet, and who contracted pneumonia after becoming wet at a fire, did not die from an "accident" which means an unlooked for mishap or an untoward event not expected or designed. The court quoted the definition of accident given in Fenton v. Thorley as follows: "The expression 'accident' is used in the popular and ordinary sense of the word as denoting an unlooked for mishap or an untoward event which is not expected or designed."

The court went on to say that since it was not unusual for firemen to get wet at a fire:

"We must therefore conclude that pneumonia was brought on, not by an unexpected event, but by an event which was an incident to his regular employment.

\*       \*       \*       \*       \*       \*

"If it can be said in the present case that the diplococus germ was dormant in the system of the deceased, and that it was aroused to activity by his exposure at the fire, the case must fail, because the thing which aroused the germ into activity was caused by events which were incident to his regular employment, and not by the unusual and unexpected event."

That is exactly the case at bar. In addition to the findings of fact by the court, the claimant is of course bound by his own claim for compensation. He says that he had a hard day, that he breathed dust and smoke and gas from the work he was doing in constructing a road. Undoubtedly, as we have all had an opportunity to observe, excavating and grading a road with a heavy truck produces a good deal of dust and it is hard work. If added to this is the smoke and gas fumes from the truck while in operation, it seems to me that it would be rather expected than otherwise that the driver of such truck would suffer from exhaustion, but there is not the slightest evidence that the claimant Stevenson did not expect to breath dust and gas and smoke, and no reasonable man could expect not to suffer a reduction of resistance to any bacterial diseases which might assail under such favorable circumstances. As the Kansas court points out, the workman either misjudged his own resisting powers or mis-

396

judged or ignored the circumstances or condition. If it be claimed that this misjudging by the workman, either of his powers of resistance or as to possible consequences of becoming excessively fatigued and having his powers of resistance reduced alone constitutes an accident, then I entirely agree with the Kansas court that the question should be answered in the negative.

In the case of Lanphier v. Air Preheater Corporation, decided in 1938, the New York Court of Appeals, in a per curiam opinion, reported in 278 N.Y. 403, 16 N.E.2d 382, said: "Pneumonia is a disease for which, under the Workmen's Compensation Law * * *, compensation may be awarded only when it is the result of an accidental injury. The inception of the disease must be assignable to something 'catastrophic or extraordinary.' A chill resulting from exposure to conditions which are normal in the conduct of the business 'in which the workman is employed, though followed by pneumonia, is not an accidental injury. Matter of Lerner v. Rump Bros., 241 N.Y. 153, 149 N.E. 334, 41 A.L.R. 1122."

The court went on to say: "The deceased knew that while working in a closed preheater the heat was great. He had previously told his wife that the temperature at the plant where he was working was at times between 130° and 150°. The heat on the day when the deceased suffered the chill was perhaps a little greater than usual, but there is nothing in the evidence which suggests that the difference was significant.

* * * He was exposed to this great heat because he accepted employment which would normally include repair jobs where the heat would be great. That circumstance distinguishes this case from the case of Matter of Hocke v. Emdee Management Corp., 245 App.Div. 882, 282 N.Y.S. 324, affirmed 269 N.Y. 592, 199 N.E. 687, where through an unexpected accident a superintendent of an apartment house was compelled to enter a room filled with steam from a valve which had accidentally become defective."

In the case at bar counsel for the appellant says of course Stevenson knew that he was going to breathe a lot of dust and smoke and gas, but he didn't know that he was going to catch pneumonia. Counsel entirely misses the point. The pneumonia is not the injury that we have to deal with. The pneumonia may be the supervening consequence of Stevenson's injury, if he received an injury. The injury, if any, was the exhaustion and lowered resistance which Stevenson received in the course of his employment. But was it accidental? By none of the tests was it accidental. There was nothing sudden about it. He worked all day under the same conditions. He knew that if he worked on a road job driving a heavy truck, and particularly the truck in question, that he would have to breathe a lot of dust and smoke and gas. There was nothing unusual about that and the court has so found.

I think it appropriate to close this opinion with the observation that I think the ma-

jority opinion does the workingmen a distinct disservice. Lord Shaw of Dunfermline, who in Clover, Clayton & Co. v. Hughes, [1910] A.C. 242, vigorously warns against extending the doctrine of Fenton v. Thorley by putting "an interpretation upon interpretation" upon the statute so as to land very far away from the meaning of the statute itself. He warns against permitting compassion for the injured or the bereaved to veer the judge toward a strained interpretation of the statute. He also confirms a view I have frequently put forward in conference, that it is hardly sound policy to create a situation by interpretation in which only the most robust and fit may obtain employment, perhaps after submitting to a rigorous physical examination by the employer. He says: "Nor do I think it altogether without a bearing on the sound construction of the statute, that if a different interpretation be put upon the words cited, then a new peril will have been introduced into the lives of many workers who, notwithstanding debility and chronic disease, are most anxious and willing to devote their remaining powers to earning an independent livelihood. Should such persons be held to carry with them into and upon employment the serious additional liability alluded to, employment may become for such persons, often the most needy and deserving of the population, more difficult to obtain."

All of the foregoing considerations impel me to dissent.